# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE No.: | 2011AP450-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Julius C. Burton, |
| | Defendant-Appellant-Petitioner. |

REVIEW OF COURT OF APPEALS DECISION
Reported at 340 Wis. 2d 497, 812 N.W.2d 539
(Ct. App. 2012 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 10, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 11, 2013 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Patricia McMahon/Kevin E. Martens |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *Esther Cohen Lee* and *Hall, Burce and Olson, S.C.,* Milwaukee, and oral argument by *Esther Cohen Lee*.

For the plaintiff-respondent, the cause was argued by *Sally L. Wellman,* assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP450-CR
(L.C. No. 2009CF2823)

STATE OF WISCONSIN                 :        IN SUPREME COURT

**State of Wisconsin,**

       **Plaintiff-Respondent,**

  **v.**

**Julius C. Burton,**

       **Defendant-Appellant-Petitioner.**

**FILED**

**JUL 10, 2013**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1    DAVID T. PROSSER, J.    This is a review of an unpublished decision of the court of appeals,[1] affirming a judgment of conviction and an order of the Milwaukee County Circuit Court denying Julius C. Burton's (Burton) postconviction motion to withdraw his guilty pleas. The case involves the merits of this postconviction motion.[2]

_____

[1] State v. Burton, No. 2011AP450-CR, unpublished slip op. (Wis. Ct. App. Feb. 14, 2012).

[2] The Honorable Patricia D. McMahon accepted Burton's pleas and imposed sentence. The Honorable Kevin E. Martens denied the motion for postconviction relief.

¶2    Burton pled guilty to two counts of attempted first-degree intentional homicide.  Initially, he had entered pleas of not guilty and then not guilty by reason of mental disease or defect (NGI),[3] but later he withdrew his not guilty pleas as part of a plea agreement.  After he was sentenced to lengthy consecutive periods of initial confinement, however, Burton moved to withdraw his guilty pleas.

¶3    For purposes of this review, Burton's postconviction motion stated two grounds for plea withdrawal.  First, Burton alleged that his two trial counsel were ineffective for permitting him to withdraw his NGI pleas inasmuch as there was no evidence in the record that counsel had informed him of the possibility of a bifurcated plea with the right to a jury trial focused solely on the issue of his mental responsibility.

¶4    Second, Burton alleged that the circuit court erred in not advising him of the bifurcated plea and trial option during the plea colloquy, so that Burton's resulting pleas were not knowing, intelligent, and voluntary.

¶5    The first ground alleging ineffective assistance of counsel is usually categorized as a Nelson/Bentley motion.[4]  The second ground alleging a defective plea colloquy is usually described as a Bangert motion.[5]  The circuit court denied both

---

[3] The terms "not guilty by reason of mental disease or defect," "NGI," and "insanity defense" are used interchangeably in this opinion.

[4] Nelson v. State, 54 Wis. 2d 489, 195 N.W.2d 629 (1972); State v. Bentley, 201 Wis. 2d 303, 548 N.W.2d 50 (1996).

[5] State v. Bangert, 131 Wis. 2d 246, 389 N.W.2d 12 (1986).

grounds of Burton's single motion without conducting an evidentiary hearing, and the court of appeals affirmed. We now affirm the court of appeals.

¶6  We conclude, first, that Burton's Nelson/Bentley motion was insufficient. The motion asserted that Burton's two trial counsel were ineffective in not pursuing an NGI or "insanity" defense. The motion claimed that Burton's explicit withdrawal of that defense as part of a plea agreement must have been based upon a failure by trial counsel to inform Burton that he had the option of pleading guilty to the crimes but also not guilty by reason of mental disease or defect. Significantly, Burton's motion never alleged that his trial counsel failed to inform Burton of this option. Instead, it merely pointed to the absence of evidence in the record that indicated that counsel had explained this option to Burton. The absence of record evidence in this situation is not enough. A defendant must affirmatively plead facts that, if true, would constitute deficient performance of counsel. Moreover, even if deficient performance had been properly pled, Burton's motion did not affirmatively assert that if trial counsel had informed him of the option of a trial focused solely upon mental responsibility, he would have chosen that option and why he would have chosen it.

¶7  The sufficiency of a Nelson/Bentley motion is critical because the defendant has the burden of proof in a Nelson/Bentley hearing. A Nelson/Bentley hearing is an evidentiary hearing in which a defendant is permitted to prove a

3

claim that his attorney was constitutionally ineffective, producing a manifest injustice. It is not a fishing expedition to try to discover error.

¶8    We conclude, second, that Burton's claim of a <u>Bangert</u> violation also was insufficient. Burton failed to state that, due to a defect in the plea colloquy, he did not enter his pleas knowingly, intelligently, and voluntarily. Because Burton did not allege his lack of personal understanding about some aspect of the plea process, no evidentiary hearing was necessary. In any event, we do not find any defect in the plea colloquy. The circuit court properly inquired as to whether Burton was entering his guilty pleas knowingly, intelligently, and voluntarily. The circuit court's inquiry not only followed standard procedure, but also asked whether Burton was knowingly, intelligently, and voluntarily withdrawing his NGI plea and giving up the right to present an insanity defense.

¶9    We reject Burton's claim of a <u>Bangert</u> violation because defendants do not have a fundamental right to an insanity plea, and it is not essential to conduct an extensive colloquy about NGI procedure before a defendant withdraws his plea of not guilty by reason of mental disease or defect. Looking forward, we do think it is better practice for circuit courts to conduct a personal colloquy on the bifurcated NGI plea and trial option to confirm the defendant's understanding of the law and to head off later claims of a <u>Bangert</u> violation or ineffective assistance of counsel.

## I. FACTUAL BACKGROUND

¶10 The underlying facts of this case are undisputed. On June 9, 2009, Milwaukee Police Officers Graham Kunisch (Officer Kunisch) and Bryan Norberg (Officer Norberg) were on routine patrol in the area of 3rd Street and West National Avenue on the southeast side of Milwaukee. As the officers drove their marked police van[6] eastbound on National Avenue, they spotted 18-year-old Burton riding his bicycle on the sidewalk, in violation of a Milwaukee city ordinance. They did not suspect that Burton was carrying a concealed weapon.

¶11 Because of the ordinance violation, the officers decided to stop Burton and conduct a field interview. Officer Norberg called out to Burton to stop, but after making brief eye contact with them, he turned away and continued riding his bicycle. Officer Norberg exited the vehicle, followed Burton, and continually asked him to stop, while Officer Kunisch followed in the police van.

¶12 Officer Norberg caught up to Burton after he turned onto South 2nd Street. Officer Norberg grabbed Burton from behind to gain control of him. Officer Kunisch got out of the police van to help, as Burton was resisting. While Kunisch was trying to gain control of Burton to perform a pat-down search, Burton pulled out a pistol and shot Officer Norberg in the face from a distance of about six inches. The bullet went through Officer Norberg's lip, under his left nostril, through bone and

---

[6] Both officers testified that in addition to driving a marked police van, they were attired in their Milwaukee Police uniforms with badges.

5

teeth, and exited out his face. A second and third bullet wounded his shoulder and grazed his right knee.

¶13 Burton also shot Officer Kunisch several times. Officer Kunisch suffered gunshot wounds to his left hand, right shoulder, and the back of his neck. More serious, Burton shot Officer Kunisch in his face, destroying his left eye and causing severe damage to the left side of his skull.

¶14 Burton fled the scene and was later arrested after a local homeowner reported that someone might be hiding in his basement. The homeowner left his residence when he heard the commotion from the shooting, and Burton likely entered an open basement door while the homeowner was absent. Police ordered Burton out of the basement, found a pistol magazine with bullets on his person, and discovered a semi-automatic pistol in the basement. After the police took Burton into custody, and after Burton was advised of his <u>Miranda</u> rights, he confessed to shooting Officers Norberg and Kunisch. A videotape from the scene of the shooting corroborated Burton's account.

## II. PROCEDURAL HISTORY

¶15 Burton was charged with two counts of attempted first-degree intentional homicide by use of a dangerous weapon, contrary to Wis. Stat. §§ 939.32, 939.63(1)(b), and 940.01(1)(a).[7] At the initial appearance, upon the request of Burton's counsel, the court ordered that Burton's competency be

---

[7] All subsequent references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

6

evaluated.    Dr. Kenneth Smail    prepared    an    initial    report recommending    further    evaluation.    The    subsequent    evaluation, conducted    by    Dr. Tracy Luchetta    at    the    Winnebago    Mental    Health Institute,    determined    that    Burton    was    competent    to    stand    trial. Neither    Burton's    newly    retained    trial    counsel,    Attorneys    Julius Kim    (Kim)    and    Jonathan    LaVoy    (LaVoy),    nor    Burton    himself objected to the evaluation's conclusion.[8]

¶16    Following    a    preliminary    hearing    at    which    Officers Norberg    and    Kunisch    testified,    the    State    filed    an    Information charging    the    same    counts    stated    in    the    Complaint.    Defense counsel    entered    a    plea    of    not    guilty    to    both    charges. Approximately    one    month    later,    defense    counsel    added    pleas    of not guilty by reason of mental disease or defect.

¶17    Dr. Smail,    a    psychologist,    again    was    appointed    to examine    Burton.    Dr. Smail's    report[9]    did    not    support    Burton's    NGI plea.

---

[8] The    competency    evaluator,    Dr.    Tracy    Luchetta    of    the Winnebago    Mental    Health    Institute,    noted    that    Burton    "presents a complicated    combination    of    current    and    past    behavioral, perceptual,    cognitive,    and    mood    disturbances."    Nevertheless, Dr.    Luchetta    found    Burton    competent    to    stand    trial.    In particular,    Dr.    Luchetta    determined    that    Burton    was "exaggerating    the    subjective    severity    of    his    symptoms. . . . Mr.    Burton's    apparent    perceptual    disturbances    do    not    interfere with his accurate perception of reality."

[9] As    part    of    his    report,    Dr.    Smail    personally    interviewed Burton,    reviewed    Burton's    health    and    mental    health    records,    his competency    evaluation,    his    academic    reports,    and    various    other materials related to Burton's case.

¶18  Dr. Smail reported that Burton had a history of mental health problems starting at age seven, when Burton was treated for hearing voices.  Dr. Smail noted that Burton was treated as recently as April 2009 at the Milwaukee County Mental Health Complex.  This treatment was less than two months before the attempted homicides.[10]  At various times over the years Burton had been diagnosed with Attention Deficient/Hyperactivity Disorder, Oppositional Defiant Disorder, "mood disorder," Bipolar Disorder, and Personality Disorder.  After his arrest for the attempted homicides, Burton's medical records at the Milwaukee jail indicate that he had a diagnostic history of schizophrenia and Attention Deficit/Hyperactivity Disorder.

¶19  Ultimately, Dr. Smail concluded that while Burton suffered from "emotional and behavioral disturbances, . . . there is not much objective evidence in his record to substantiate a diagnosis that may reflect psychosis."  With regard to the attempted homicides, Dr. Smail concluded:

---

Dr. Smail noted in his report that as part of his interview with Burton he explained the purpose of his mental health assessment of Burton.  In particular, Dr. Smail "described the issue of exculpatory mental disease" and "described a bifurcated trial process."  After further discussion about the evaluation, Dr. Smail noted that Burton "did appear to understand the nature and purpose of the assessment."

[10] On April 25, 2009, Burton was taken to the Mental Health Complex by his family, but he insisted upon being discharged the following day.  He was told to take certain medication and to meet with a therapist at Acacia Clinic.  He met with the therapist on May 11 and on June 4, 2009, five days before the shootings.

> I do not believe that there is any evidence to reasonably sustain a diagnosis that would reflect a psychosis of any sort for Mr. Burton when he had the altercation with the police officers. . . .
>
> It is also my opinion that the evidence ultimately fails to indicate that Mr. Burton, at the time of the offense, was substantially unable to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law.

¶20 Burton's two counsel retained Dr. Dianne Lytton to evaluate Burton as a defense expert and to determine whether the evidence supported his NGI plea. Dr. Lytton disagreed with the conclusions reached by Dr. Smail and concluded that, "at the time of the alleged criminal events, Mr. Burton experienced symptoms of psychotic disorder. . . . [I]n my opinion, he is most appropriately diagnosed with schizoaffective disorder." Dr. Lytton noted Burton's long history of mental illness and his family's history of mental illness. Dr. Lytton also disagreed with the opinions of Drs. Luchetta and Smail that Burton was malingering, or intentionally faking his symptoms.

¶21 The State offered a plea agreement to Burton in which he would plead guilty to the two counts of attempted first-degree intentional homicide while armed with a dangerous weapon. In exchange, the State would make a global sentence recommendation of 50 years in confinement and no specific recommendation on extended supervision. The State would be free to argue aggravating and mitigating circumstances, Burton would be free to argue mitigating circumstances at sentencing, and the victims would be free to make their own sentencing recommendations.

9

¶22 Burton accepted the State's plea offer.  On January 14, 2010, he signed a plea questionnaire/waiver of rights form acknowledging the charges to which he was pleading guilty, the constitutional rights he was waiving, and his understanding of the maximum penalties that the court could impose.  Burton also signed an addendum to the plea questionnaire/waiver of rights form, which stated, "I understand that by pleading I am giving up defenses such as alibi, intoxication, self-defense, [and] <u>insanity</u>."  (Emphasis added.)  One week later, on January 21, 2010, the circuit court held a plea hearing.

¶23 At the plea hearing, the court conducted a thorough plea colloquy with Burton.  Burton was sworn in and Milwaukee County Circuit Judge Patricia McMahon informed him that at any time he could stop the colloquy and talk to his attorneys.  The judge confirmed that Burton understood the two charges to which he was pleading guilty and the maximum penalty on each charge, including the maximum period of initial confinement and the maximum period of extended supervision.  The judge also informed Burton that the court was not bound by the plea agreement and could impose up to the maximum penalty.

¶24 The court confirmed that Burton had time to meet with his attorneys and discuss his case with them, that he was making the decision to plead guilty "freely and voluntarily," and that he had signed and understood the plea questionnaire/waiver of rights form and the addendum to the form.  The court noted the constitutional rights Burton was waiving by agreeing to plead guilty.

¶25 The court then conducted a personal colloquy with Burton regarding his decision to withdraw his NGI plea:

> THE COURT: You are also giving up the right to raise certain defenses such as alibi or intoxication or self-defense or insanity. Correct?
>
> MR. BURTON: Yes.
>
> THE COURT: You talked with your attorney about entering, in fact I believe you did enter a plea of not guilty by reason of mental disease or defect. Correct?
>
> MR. BURTON: Yes.
>
> THE COURT: You are withdrawing that plea at this time. Correct?
>
> MR. BURTON: Yes.

¶26 The court also engaged Burton and his defense counsel in an extensive discussion as to Burton's understanding of the charges to which he was pleading guilty and the consequences of those pleas:

> THE COURT: And counsel, are you satisfied that your client understands the nature of the charges, the effects of his plea and is making his plea freely and voluntarily?
>
> MR. LaVOY: Yes. The Sheriff's Department provided both myself and Mr. Kim quite a bit of access to Mr. Burton. We have met with him a number of times about defenses, the trial issues, N.G.I. issues, motions. I believe that he's making this decision of his own free will.
>
> We have explained to Mr. Burton [that] we retained experts and the experts are prepared to testify, if necessary. But he's informed us he wishes to accept responsibility by entering the pleas, so I believe that he is doing this of his own free will.

11

THE COURT: Mr. Burton, did your attorney describe what your conversation, general summary of your conversation . . . with your attorney?

MR. BURTON: Yes.

THE COURT: So, you talked about this with your attorneys for the time they represented you since the very beginning of this case. Correct?

MR. BURTON: Yes.

THE COURT: And they came and talked with you and talked about your various options in this case. Correct?

MR. BURTON: Yes.

¶27 The prosecutor, Assistant District Attorney Mark Williams, also spoke on the record to note that the defense had an expert ready to testify that Burton was not guilty by reason of mental disease or defect, but that Burton was waiving the right to present that defense:

> MR. WILLIAMS: Judge, there is a doctor that . . . would render [the] opinion that Mr. Burton was not guilty by reason of mental disease or defect. I'm assuming that Mr. Burton read that report, knows that report is available and that he has two competent lawyers that would present that if the matter [went] to trial.
>
> There also is at least one doctor that finds Mr. Burton . . . did understand what he was doing at the time and would contradict that opinion. But Mr. Burton is aware that there is an opinion from a doctor that he . . . was not guilty by mental disease or defects at the time and he is waiving that right to present that defense.
>
> THE COURT: Counsel, have you had that discussion with your client?
>
> MR. LaVOY: Yes. The doctor that the State's referring to is Dr. Lytton. That is the doctor we retained. I

had reviewed that report word for word with Mr. Burton. He is aware of her opinion and he is aware that she would be prepared to testify, if necessary at trial. But he indicated to me that he wishes to again, accept responsibility and [forgo] that issue.

He's also aware of the other opinions that have been presented by the other doctors referenced by the State. So, it is my opinion that his position is that he wishes to resolve the case with a plea today.

THE COURT: So, the not guilty by reason of mental disease or defect plea would be withdrawn at this time too?

MR. LaVOY: That is correct.

THE COURT: Mr. Burton, you heard what the State said and your counsel said. Do you disagree with anything that they have said so far?

MR. BURTON: No.

THE COURT: And they have had, your attorneys [have] had that conversation with you. Correct?

MR. BURTON: Yes.

THE COURT: And you have gone through, there is a lot of information here. So, they have spent a lot of time with you, haven't they?

MR. BURTON: Yes.

THE COURT: And you specifically talked about your right to raise that particular defense of mental disease or defect. Correct?

MR. BURTON: Yes.

¶28 The circuit court used the criminal complaint, the preliminary hearing, and security videotape of the attempted homicides as the factual basis for Burton's guilty pleas. Given the factual basis, and its finding that Burton was entering his pleas "freely," "intelligent[ly]," and "voluntarily," the court

13

accepted Burton's guilty pleas and found him guilty of both counts.

¶29  At sentencing, the State explained that it thought the plea bargain was fair, that it would spare the officers and their families the burdens of going through a trial, and that it would protect the public by ensuring that Burton would spend much of the rest of his life in confinement.  The State acknowledged Burton's history of mental illness, but maintained that Burton knew that the shootings were wrong.

¶30  Defense counsel pointed to Burton's long history of mental illness.  Nevertheless, defense counsel reminded the court that Burton chose to forgo the insanity defense and decided to accept responsibility for the attempted homicides. Counsel contended that by forgoing the defense and accepting responsibility, Burton should be credited for sparing the officers and their families the burdens of a trial and perhaps receive a sentence that would allow him to get out of confinement at some point in his life.

¶31  In imposing sentence, Judge McMahon considered the extreme seriousness of Burton's offenses, the devastating impact of the shootings on the officers and their families, and the risks that Burton posed to the community.  Judge McMahon also took into account Burton's history of mental illness and credited him for sparing the officers and their families a trial.  Ultimately, the court sentenced Burton to 40 years of initial confinement and ten years of extended supervision on each count, to be served consecutively.

14

¶32 On January 12, 2011, Burton's postconviction counsel, Attorney Esther Cohen Lee (Attorney Lee), filed a motion to withdraw Burton's guilty pleas and vacate his convictions.[11]

¶33 Burton's postconviction motion asserted three claims, only two of which are relevant in this review.[12] First, Burton alleged that trial counsel was ineffective "since it was obvious from . . . the record of this matter, . . . that counsel failed to pursue" an NGI defense and instead counseled Burton to enter pleas of guilty. Burton's motion also claimed that "there is nothing in the record to indicate that defense counsel had ever advised [Burton] of the possibility of entering . . . a bifurcated plea." The motion also claimed that:

> [I]f the defendant had been made to understand that the jury could certainly have accepted Dr. Lytton's expert opinions in this matter and, therefore, that the jury could have found him not guilty by reason of mental disease or defect, and if he had been advised that he could have had the jury consider that affirmative defense even if he had pled guilty to having committed the crimes charged, there is a reasonable probability that he would have not pled guilty to the crimes. For that reason, defense

---

[11] The circuit court did not accept Attorney Lee's initial motion to withdraw Burton's guilty pleas and convictions dated December 28, 2011, because it was in excess of 20 pages, contrary to Rule 4.17(B) of the Local Rules of the First Judicial District. The circuit court granted a one-time partial exception to the rule, allowing Burton to file a 25-page motion.

[12] Burton's postconviction motion also claimed that trial counsel was ineffective for failing to advise him that the circuit court was unlikely to follow the State's sentencing recommendation. That claim was not before the court of appeals and is not before this court.

15

counsel's deficient performance prejudiced the defendant . . . .

¶34 Second, Burton contended that the circuit court failed to advise him at the plea hearing that "he had the right to a bifurcated jury trial . . . and that he could choose to plead guilty to the crimes and still have a jury trial" on the issue of mental responsibility. Burton claimed that because the circuit court failed to inform him of this right to bifurcation, his pleas were not "voluntarily, knowingly, and intelligently made," resulting in manifest injustice.

¶35 Milwaukee County Circuit Judge Kevin E. Martens denied Burton's postconviction motion without a hearing. Judge Martens noted that there was a "very extensive record made during the plea hearing about the defendant's desire to withdraw his original [NGI] plea." Noting the relevant portions of the plea hearing transcript, Judge Martens concluded that there was "nothing which demonstrates that [Burton] was forced into entering guilty pleas . . . or that his original [NGI] plea . . . was abandoned without reason." Judge Martens added that Judge McMahon "had no duty to advise [Burton] of the possibility of a bifurcated trial on his original plea when he was entering guilty pleas to both charges. . . . [Judge McMahon] fulfilled her duties during the guilty plea colloquy."

¶36 The court of appeals affirmed, holding that the circuit court properly denied Burton's postconviction motion without an evidentiary hearing on either claim. State v. Burton, No. 2011AP450-CR, unpublished slip op., ¶1 (Wis. Ct.

App. Feb. 14, 2012).  The court of appeals rejected Burton's claim of ineffective assistance of counsel as inadequately pled because the motion failed to allege both deficient performance and prejudice.  Id., ¶¶12-14.  As to the claim of a Bangert violation, the court of appeals agreed with the circuit court that Burton failed to allege a deficiency in the plea colloquy or that his pleas were, in fact, not entered knowingly, intelligently, and voluntarily.  Id., ¶¶17-18.

¶37 Burton petitioned this court for review, which we granted on September 27, 2012.

### III. STANDARD OF REVIEW

¶38  In this case, Burton presents two issues for review. The first issue is whether Burton's postconviction motion is sufficient on its face to entitle him to an evidentiary hearing on his claim of ineffective assistance of trial counsel and whether the circuit court erred in denying Burton an evidentiary hearing.[13]  Whether a motion alleges sufficient facts that, if true, would entitle a defendant to relief is a question of law that this court reviews de novo.  State v. Allen, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433 (citing State v. Bentley, 201 Wis. 2d 303, 309-10, 548 N.W.2d 50 (1996)).  The circuit court must hold an evidentiary hearing if the defendant's motion raises such facts.  Id.  (citing Bentley, 201 Wis. 2d at 310;

---

[13] This opinion uses the term "trial counsel" to refer to Attorneys Julius Kim and Jonathan LaVoy, even though Burton's case never went to trial.  Attorneys Kim and LaVoy did not represent Burton at his initial appearance.

17

Nelson v. State, 54 Wis. 2d 489, 497, 195 N.W.2d 629 (1972)). "However, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." Id. (citations omitted).

¶39 The second issue is whether Burton's postconviction motion is sufficient on its face to entitle him to an evidentiary hearing on his claim of a Bangert violation, and whether the circuit court erred in denying Burton a hearing. Whether a defendant has properly alleged "deficiencies in the plea colloquy that establish a violation of Wis. Stat. § 971.08 or other mandatory duties at a plea hearing is a question of law we review de novo." State v. Brown, 2006 WI 100, ¶21, 293 Wis. 2d 594, 716 N.W.2d 906 (citing State v. Brandt, 226 Wis. 2d 610, 618, 594 N.W.2d 759 (1999)). Whether a defendant has sufficiently alleged that "he did not know or understand information that should have been provided at the plea hearing" also is a question of law that we review de novo. Id. (citing Bentley, 201 Wis. 2d at 310).

## IV. ANALYSIS

¶40 In this case, Burton's motion alleges a claim of ineffective assistance of counsel, which is subject to the Nelson/Bentley standard for an evidentiary hearing. In addition, Burton alleges a Bangert violation because of a purported deficiency in the plea colloquy and implies that he

18

did not enter his pleas knowingly, intelligently, and voluntarily. "A defendant may invoke both Bangert and Nelson/Bentley in a single postconviction motion to withdraw a plea of guilty or no contest." State v. Howell, 2007 WI 75, ¶73, 301 Wis. 2d 350, 734 N.W.2d 48 (citing Brown, 293 Wis. 2d 594, ¶42).

¶41 Although a defendant may invoke both types of claims in a single postconviction motion, the pleading standards for the two claims are different. Id. We will examine the pleading standards for each type of claim and apply them to Burton's motion. We begin our analysis, however, with a brief explanation of the NGI plea.

### A. Entry of and Trial Upon an NGI Plea

¶42 Wisconsin Stat. § 971.15 provides criminal defendants with an affirmative defense of not guilty by reason of mental disease or defect. This is known in common parlance as the "insanity" defense. It requires that a defendant establish to a reasonable certainty, by the greater weight of credible evidence, that the defendant, as a result of mental disease or defect, "lacked substantial capacity either to appreciate the wrongfulness of his . . . conduct or conform his . . . conduct to the requirements of law." Wis. Stat. § 971.15(1), (3).

¶43 A defendant may enter a plea of not guilty by reason of mental disease or defect in conjunction with a plea of not guilty. Wis. Stat. § 971.06(1)(d). If the NGI plea is not joined with a plea of not guilty, the plea admits that but for lack of mental capacity the defendant committed all the

19

essential elements of the offenses charged. Id. Then——when there is a substantive basis for finding the crimes charged——the court will find the defendant guilty of the elements of the crimes, and the NGI plea will be left for trial. See State v. Langenbach, 2001 WI App 222, ¶19, 247 Wis. 2d 933, 634 N.W.2d 916 ("[A] defendant can only be found not guilty by reason of mental disease or defect if he or she first admits to the criminal conduct or is found guilty.").

¶44 Conversely, if the defendant pleads not guilty in conjunction with an NGI plea, Wis. Stat. § 971.165(1) provides for the bifurcation of the guilt and mental responsibility phases of trial:

> (1) If a defendant couples a plea of not guilty with a plea of not guilty by reason of mental disease or defect:
>
> (a) There shall be a separation of the issues with a sequential order of proof in a continuous trial. The plea of not guilty shall be determined first and the plea of not guilty by reason of mental disease or defect shall be determined second.
>
> (b) If the plea of not guilty is tried to a jury, the jury shall be informed of the 2 pleas and that a verdict will be taken upon the plea of not guilty before the introduction of evidence on the plea of not guilty by reason of mental disease or defect. No verdict on the first plea may be valid or received unless agreed to by all jurors.
>
> (c) If both pleas are tried to a jury, that jury shall be the same . . . .

Wis. Stat. § 971.165(1) (emphasis added).

20

¶45 The bifurcated trial for determining guilt and mental responsibility was first enunciated by this court in <u>State ex rel. La Follette v. Raskin</u>, 34 Wis. 2d 607, 150 N.W.2d 318 (1967). In <u>Raskin</u>, the court addressed whether the insanity defense statute at that time[14] allowed for bifurcation. <u>Raskin</u>, 34 Wis. 2d at 614. The <u>Raskin</u> court held that a defendant was entitled to a sequential order of proof at trial——guilt first and then the issue of criminal responsibility——"to avoid confusion and prejudice to the jury from inculpatory statements which were not given or intended to be used on the issue of guilt."[15] <u>Id.</u> at 614, 623; <u>see also</u> <u>State v. Murdock</u>, 2000 WI App 170, ¶23, 238 Wis. 2d 301, 617 N.W.2d 175.

---

[14] Wisconsin Stat. § 957.11(1) (1967-68), the then-insanity defense statute, read as follows:

> (1) No plea that the defendant indicted or informed against was insane or feeble-minded at the time of the commission of the alleged crime shall be received unless it is interposed at the time of arraignment and entry of a plea of not guilty unless the court for cause shown otherwise orders. When such plea is interposed the special issue thereby made shall be tried with the plea of not guilty; and if the jury finds that the defendant was insane or feeble-minded or that there is reasonable doubt of his sanity or mental responsibility at the time of the commission of the alleged crime, they shall find the defendant not guilty because insane or feeble-minded.

[15] This court reiterated the policy of avoiding confusion and prejudice in <u>State v. Leach</u>, 124 Wis. 2d 648, 370 N.W.2d 240 (1985):

> The issue of not guilty by reason of mental disease or defect is tried separately from the question of whether the defendant committed the acts which constitute a criminal offense. The principal

21

¶46 Wisconsin Stat. § 971.175 (1969)[16] codified Raskin's bifurcated trial process. See § 63, ch. 255, Laws of 1969. In 1987 the legislature replaced section 971.175 with Wis. Stat. § 971.165, which maintained "the basic bifurcated trial procedure with its sequential order of proof as first established in Raskin." Murdock, 238 Wis. 2d 301, ¶23. See also 1987 Wis. Act 86.

B. Burton's Claim of Ineffective Assistance of Counsel

¶47 The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to the effective assistance of counsel. State v. Balliette, 2011 WI 79, ¶21, 336 Wis. 2d 358, 805 N.W.2d 334 (citing Strickland v. Washington, 466 U.S. 668, 686 (1984)). A defendant's claim

_____

> purpose of bifurcation is to withhold from the jury, while it debates the question of guilt or innocence, evidence which is not legally relevant to that question. This permits the defendant to fully litigate the issue of mental responsibility without compromising his ability to contest the issue of guilt. Bifurcation protects both the defendant and the state from having to confront evidence which if introduced in the guilt phase, could confuse the jury or appeal to its prejudice or sympathy.

Id. at 662 (citations omitted).

[16] Wisconsin Stat. § 971.175 (1969) read in part:

> When a defendant couples a plea of not guilty with a plea of not guilty by reason of mental disease or defect, there shall be a separation of the issues with a sequential order of proof before the same jury in a continuous trial. The guilt issue shall be heard first and then the issue of the defendant's mental responsibility.

22

of ineffective assistance has two components. Strickland, 466 U.S. at 687. First, a "defendant must show that counsel's performance was deficient." Id. Second, a defendant must show that counsel's deficient performance prejudiced the defense. Id.

¶48 A defendant does not show the element of deficient performance "simply by demonstrating that his counsel was imperfect or less than ideal." Balliette, 336 Wis. 2d 358, ¶22. Rather, "the proper standard for attorney performance is that of reasonably effective assistance" by a "reasonably competent attorney." Strickland, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. When a court considers this issue, "counsel is strongly presumed to have rendered adequate assistance" to the defendant, id. at 690; thus, "the law affords counsel the benefit of the doubt." Balliette, 336 Wis. 2d 358, ¶27.

¶49 As a general rule, a defendant who shows deficient performance of counsel cannot presume prejudice. Strickland, 466 U.S. at 692-93.[17] Instead, a defendant must affirmatively

---

[17] There are some exceptions to the rule. "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." Strickland v. Washington, 466 U.S. 668, 692 (1984). In addition, actual conflict of interest will result in a "similar, though more limited, presumption of prejudice." Id. See also Cuyler v. Sullivan, 446 U.S. 335, 348, 350 (1980).

23

prove prejudice by "show[ing] that particular errors of counsel were unreasonable" and that those errors "had an adverse effect on the defense." Id. at 693. Therefore, the proper test for prejudice in the context of ineffective assistance of counsel is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; Balliette, 336 Wis. 2d 358, ¶24.

¶50 To establish prejudice in the context of a postconviction motion to withdraw a guilty plea based upon ineffective assistance of counsel, the defendant must allege that "but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Bentley, 201 Wis. 2d at 312 (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

¶51 Ineffective assistance of trial counsel may be raised in a postconviction motion under Wis. Stat. § 974.02. The evidentiary hearing evaluating counsel's effectiveness is widely referred to as a Machner hearing. State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).[18]

---

[18] In State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979), the court of appeals explored the hearing that results "where a counsel's conduct at trial is questioned." Id. at 804. The term "Machner hearing" appears to have been extended to include all hearings challenging the effectiveness of trial counsel or preconviction counsel. A Nelson/Bentley hearing is one subset of a Machner hearing. A Bangert hearing, which involves an alleged deficiency on the part of a judge, is not a subset of a Machner hearing.

24

¶52 Generally, a motion must "[s]tate with particularity the grounds for the motion and the order or relief sought." Wis. Stat. § 971.30(2)(c).    This court has developed particularized standards for Nelson/Bentley motions to secure an evidentiary hearing on a claim of ineffective assistance of trial counsel.

¶53 In Nelson, the court rejected the defendant's argument that an evidentiary hearing must be held whenever a defendant moves to withdraw a plea of guilty, unless the defendant's motion is patently frivolous.    Nelson, 54 Wis. 2d at 495. Instead, the Nelson court held:

> [I]f a motion to withdraw a guilty plea after judgment and sentence alleges facts which, if true, would entitle the defendant to relief, the trial court must hold an evidentiary hearing.  However, [1] if the defendant fails to allege sufficient facts in his motion to raise a question of fact, or [2] presents only conclusionary allegations, or [3] if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing.  It is incumbent upon the trial court to form its independent judgment after a review of the record and pleadings and to support its decision by written opinion.

Id. at 497-98 (footnote omitted).

¶54 In Bentley, a defendant sought to withdraw his guilty pleas on the basis of ineffective assistance of counsel. Bentley, 201 Wis. 2d at 307.  Bentley noted that a defendant may withdraw a guilty plea after sentencing "only upon a showing of 'manifest injustice' by clear and convincing evidence."  Id. at 311 (citing State v. Rock, 92 Wis. 2d 554, 558-59, 285

25

N.W.2d 739 (1979)).  The "manifest injustice" requirement is met if a defendant is denied the effective assistance of counsel. Id. (citations omitted).  The Bentley court relied on Nelson for the criteria in determining whether a hearing is required on a motion to withdraw a guilty plea, but restated the Nelson holding as a two-part test:

> If the motion on its face alleges facts which would entitle the defendant to relief, the circuit court has no discretion and must hold an evidentiary hearing. Whether a motion alleges facts which, if true, would entitle a defendant to relief is a question of law that we review de novo.
>
> However, if the motion fails to allege sufficient facts, the circuit court has the discretion to deny a postconviction motion without a hearing based on any one of the three factors enumerated in Nelson.  When reviewing a circuit court's discretionary act, this court uses the deferential erroneous exercise of discretion standard.

Id. at 310–11 (citations omitted.)

¶55  The Bentley court continued:

> This court has long held that the facts supporting plea withdrawal must be alleged in the petition and the defendant cannot rely on conclusory allegations, hoping to supplement them at a hearing . . . .
>
> The nature and specificity of the required supporting facts will necessarily differ from case to case. However, a defendant should provide facts that allow the reviewing court to meaningfully assess his or her claim.

Id. at 313–14 (citations omitted).

¶56  Howell clarified the Bentley restatement of the Nelson test.  "The correct interpretation of Nelson/Bentley is that an

26

evidentiary hearing is not mandatory if the record as a whole conclusively demonstrates that defendant is not entitled to relief, even if the motion alleges sufficient nonconclusory facts." Howell, 301 Wis. 2d 350, ¶77 n.51.

¶57 State v. Hampton, 2004 WI 107, 274 Wis. 2d 379, 683 N.W.2d 14, and Allen fleshed out the requirement for sufficient facts that would allow a court to meaningfully assess a defendant's claim in a postconviction motion.

¶58 In Hampton, we discussed the difference between Bangert claims of a defective plea colloquy and Nelson/Bentley claims of ineffective assistance of counsel. Hampton, 274 Wis. 2d 379, ¶¶50-65. While Bangert-type claims require a defendant to point to a specific deficiency in the plea colloquy and assert an unknowing, unintelligent, and involuntary plea because of that deficiency, Nelson/Bentley-type claims are different in that they assert a legal conclusion. Id., ¶¶57-58. "[Nelson/Bentley-type] legal conclusions cry out for supporting facts, and these supporting facts must be alleged to satisfy the defendant's burden for an evidentiary hearing." Id., ¶58. Hampton continued:

> [T]he Bentley court explained that normally a defendant is entitled to withdraw a guilty plea after sentencing only upon a showing of "manifest injustice by clear and convincing evidence." When, for example, the basis for this injustice is an allegation that defendant involuntarily entered a plea because of the ineffective assistance of counsel, his claim raises questions about both deficient performance and prejudice. To establish deficient performance, a defendant must necessarily provide the factual basis for the court to make a legal determination. To show

27

prejudice, a defendant must do more than merely allege that he would have pleaded differently but for the alleged deficient performance. He must support that allegation with "objective factual assertions."

Id., ¶60 (citations omitted).

¶59 Hampton added that "[i]n Bentley-type cases, the defendant has the burden of making a prima facie case for an evidentiary hearing . . . . The defendant must prove the linkage between his plea and the purported defect." Id., ¶63. Ultimately, "[t]he defendant's proof must add up to manifest injustice." Id.

¶60 The Allen court noted that "the sufficiency standard for postconviction motions requires more from a defendant" than for pretrial motions where a defendant has the "opportunity to develop the factual record." Allen, 274 Wis. 2d 568, ¶11 (citations omitted). Thus, the Allen court offered a practical blueprint for specificity in postconviction motions, recommending that:

> postconviction motions sufficient to meet the Bentley standard allege the five 'w's' and one 'h'; that is, who, what, where, when, why, and how. A motion that alleges, within the four corners of the document itself, . . . material factual objectivity . . . will necessarily include sufficient material facts for reviewing courts to meaningfully assess a defendant's claim.

Id., ¶23 (footnote omitted).

C. Nelson/Bentley Standard Applied to Burton's Motion

¶61 Against this background, we turn to the allegations of ineffective assistance of counsel in Burton's postconviction motion.

28

¶62 Burton's motion alleged that his trial counsel was ineffective under both prongs of the Strickland test. Burton alleged that trial counsel's performance was deficient "since it was obvious from . . . the record of this matter, . . . that counsel failed to pursue" an NGI defense and instead counseled Burton to enter pleas of guilty. Burton's motion also claimed that "there is nothing in the record to indicate that defense counsel had ever advised [Burton] of the possibility of entering . . . a bifurcated plea." Burton's motion alleged prejudice to the defendant in that if he had known of the possibility of a bifurcated trial on mental responsibility, "there is a reasonable probability that he would not have pled guilty to the crimes."

¶63 We conclude that Burton's motion was insufficient because it did not adequately plead deficient performance by Burton's trial counsel. Burton's motion pointed to the record and suggested that because the record did not show that counsel informed Burton of the possibility of a bifurcated trial, Burton's counsel must not have informed Burton of the possibility of a bifurcated trial. This is a shaky inference at best, inasmuch as virtually all meetings between attorneys and clients are not "on the record." Burton's motion did not allege that his counsel never informed him that he had the option to plead guilty to the crimes and have a jury determine his mental responsibility. We suspect that Burton's attorney crafted Burton's motion the way she did to push his arguments as far as the facts allowed.

29

¶64 But it is not enough for the postconviction motion to allege that the record does not show that Burton was told about his options. To obtain an evidentiary hearing based on ineffective assistance of counsel, Burton was required to assert that his counsel in fact failed to tell him this information. He was also required to assert that this failure to inform him of his prerogatives was so serious an error that it fell below the standard of reasonable performance by reasonable counsel, such that counsel was not functioning as counsel, as guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687. Burton's motion failed to make this elementary allegation of deficient performance. Burton's motion is conclusory and lacks sufficient material facts to establish a failure to inform. The motion presents a hypothesis, not an offer of proof.

¶65 The record in this case does not reveal all the information that trial counsel provided to Burton in regard to his plea option, nor should it. As the State observed, a criminal record does not contain all the information that trial counsel provides to a defendant. At a plea hearing, a record is made to establish that a defendant enters his plea knowingly, intelligently, and voluntarily. Trial counsel must provide enough information to a defendant that any plea is made with a constitutionally-required degree of understanding and willingness. However, the record is not likely to contain a detailed recitation of all information that trial counsel provided to the defendant throughout counsel's representation.

30

¶66 Here, the plea hearing transcript reveals that Burton's counsel communicated with him about "N.G.I. issues," retained experts who were ready to testify should Burton go to trial on an NGI plea, talked to Burton about "[his] various options in this case," and "specifically talked about [his] right to raise that particular defense of mental disease or defect." These statements in the record permit inferences about the information provided to Burton that are very different from the inferences that Burton's motion urges the court to draw.

¶67 A complete record was made of Burton's decision to forgo an NGI defense and enter a plea of guilty. Burton cannot now allege a purported gap in the record as justification to turn a requested evidentiary hearing into a fishing expedition. Either Burton's two counsel told him about the possibility of a bifurcated trial on mental responsibility or they did not. If trial counsel did not tell him, Burton should have alleged this failure on the basis of his personal knowledge. In the absence of such an allegation, there is an insufficient factual basis for investigating deficient performance of counsel in an evidentiary hearing.[19]

¶68 Even if we were to conclude that Burton's allegation of deficient performance was sufficient, Burton was still required to allege sufficient facts to show that the deficient

---

[19] Moreover, Burton's motion did not allege that he did not know that he could have a bifurcated trial on mental responsibility, another claim necessary to sufficiently allege deficient performance of counsel.

31

performance prejudiced his defense.  Burton's motion fails in this regard, too, because it does not assert how the option of bifurcation on mental responsibility would have caused him to decline the plea bargain and proceed to trial.

¶69  Burton's motion alleged that had he known about the option of bifurcation on mental responsibility, "there is a reasonable probability that he would not have pled guilty to the crimes."   This is speculation, not assertion.   The State's proffered sentencing recommendation was not especially generous but the charges were so serious that the State could have argued for much more time.  Had Burton not accepted the plea agreement, he would likely have pled guilty to the charged crimes——with no sentence recommendation——and taken his chances with a jury on the issue of mental responsibility.

¶70  Burton's motion asserted that he could have presented the report of his retained expert, Dr. Lytton, and her assessment of his mental health at the mental responsibility phase of a bifurcated trial.  Essentially, Burton contended that had he known of the option to a bifurcated trial on mental responsibility, he could have presented this mental illness evidence to the jury and the lack of opportunity to do so constituted prejudice to his defense.  On the other hand, the State would have presented contrary evidence from Dr. Smail and Dr. Luchetta, the competency evaluator.  The jury would have had to find Dr. Lytton's opinion more persuasive than the other experts.   Burton would have had to convince a jury "to a reasonable certainty by the greater weight of the credible

32

evidence" that, at the time he admittedly attempted to kill two police officers, his conduct was the result of mental disease or defect. Wis. Stat. § 971.15(3).

¶71 We conclude that Burton failed to allege sufficient material facts to support a claim of ineffective assistance of counsel, and the circuit court did not err in denying Burton's motion without an evidentiary hearing.

### D. Burton's Claim of a Bangert Violation

¶72 Burton's motion also alleged a Bangert violation. Burton alleges that he had a right to plead guilty to the crimes and to have a jury determine whether he suffered from mental disease or defect. Burton contends that the circuit court failed to advise him of this right during the plea colloquy, and consequently his pleas were not knowing, intelligent, and voluntary. Burton contends, in essence, that the plea colloquy outlined in Brown[20] must be substantially modified whenever a defendant contemplates withdrawal of an NGI plea.

---

[20] To ensure a knowing, intelligent, and voluntary plea, a court must, at a plea hearing and on the record, address the defendant personally and:

(1) Determine the extent of the defendant's education and general comprehension so as to assess the defendant's capacity to understand the issues at the hearing;

(2) Ascertain whether any promises, agreements, or threats were made in connection with the defendant's anticipated plea, his appearance at the hearing, or any decision to forgo an attorney;

(3) Alert the defendant to the possibility that an attorney may discover defenses or mitigating circumstances that would not be apparent to a layman such as the defendant;

33

¶73 The duties of the court established in Wis. Stat. § 971.08 and in <u>Bangert</u> and its progeny are designed to ensure that a defendant's guilty or no contest plea is knowingly, intelligently, and voluntarily entered. <u>Brown</u>, 293 Wis. 2d 594, ¶23; <u>Hampton</u>, 274 Wis. 2d 379, ¶21. "When a defendant pleads guilty or no contest, he or she waives several constitutional rights, including the privilege against self-incrimination, the

---

(4) Ensure the defendant understands that if he is indigent and cannot afford an attorney, an attorney will be provided at no expense to him;

(5) Establish the defendant's understanding of the nature of the crime with which he is charged and the range of punishments to which he is subjecting himself by entering a plea;

(6) Ascertain personally whether a factual basis exists to support the plea;

(7) Inform the defendant of the constitutional rights he waives by entering a plea and verify that the defendant understands he is giving up these rights;

(8) Establish personally that the defendant understands that the court is not bound by the terms of any plea agreement, including recommendations from the district attorney, in every case where there has been a plea agreement;

(9) Notify the defendant of the direct consequences of his plea; and

(10) Advise the defendant that "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense [or offenses] with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law," as provided in Wis. Stat. § 971.08(1)(c).

<u>State v. Brown</u>, 2006 WI 100, ¶35, 293 Wis. 2d 594, 716 N.W.2d 906 (footnotes omitted).

right to a trial by jury, and the right to confront one's accusers." Hampton, 274 Wis. 2d 379, ¶22 (citing Boykin v. Alabama, 395 U.S. 238, 243 (1969)). Waiving constitutional rights must be knowing, intelligent, and voluntary acts "done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748 (1970) (footnote omitted). Thus, before a court accepts a plea of guilty or no contest, it must "[a]ddress the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted." Wis. Stat. § 971.08(1)(a).

¶74 If a circuit court fails to fulfill one of these duties at the plea hearing, and the defendant "did not understand an aspect of the plea because of the omission," the defendant may move to withdraw his plea, alleging a Bangert violation. Brown, 293 Wis. 2d 594, ¶36.

¶75 The procedure for filing a Bangert motion has been explained as follows:

> The defendant must file a postconviction motion under Wis. Stat. § 809.30 or other appropriate statute. The motion must (1) make a prima facie showing of a violation of Wis. Stat. § 971.08(1) or other court-mandated duties by pointing to passages or gaps in the plea hearing transcript; and (2) allege that the defendant did not know or understand the information that should have been provided at the plea hearing.

Id., ¶39 (citing Bangert, 131 Wis. 2d at 274) (emphasis added).

¶76 In Brown, the defendant's motion stated that the record failed to demonstrate that he actually understood the

35

elements of the crimes to which he pled guilty. Brown's motion did not make a direct allegation. Id., ¶61. Consequently, this court was concerned with the lack of a direct allegation that the defendant did not know or understand some aspect of his plea. Id., ¶62. We explained:

> [I]f the defendant is unwilling or unable to assert a lack of understanding about some aspect of the plea process, there is no point in holding a hearing. . . . In the absence of a claim by the defendant that he lacked understanding with regard to the plea, any shortcoming in the plea colloquy is harmless.

Id., ¶63.

¶77 The Brown court cautioned that in the ordinary case, defense counsel should plead with particularity a defendant's lack of understanding. Id., ¶67.

¶78 Only if "the motion establishes a prima facie violation of Wis. Stat. § 971.08 or other court-mandated duties and makes the requisite allegations" must the court hold an evidentiary Bangert hearing. Id., ¶40. Thus, the initial burden rests with the defendant to show a defective plea colloquy and allege that he did not know or understand information that should have been provided during the plea colloquy. Hampton, 274 Wis. 2d 379, ¶46.

¶79 In this case, Burton's motion was insufficient to require an evidentiary hearing. Burton's motion did not allege that at the time his pleas were entered, he did not know or understand that he had the option of a bifurcated trial on the issue of mental responsibility after pleading guilty to the

36

crimes.    Rather, Burton asserted in his motion that there was nothing in the record that indicated he was ever made aware of his "right" to a bifurcated trial on mental responsibility; thus, his plea was not knowing, intelligent, and voluntary. Burton failed to plead with particularity that he entered his plea unknowingly, unintelligently, and involuntarily because he did not understand his procedural rights.

¶80  More important, Burton's motion failed to identify a real deficiency in the plea colloquy.    Neither Wis. Stat. § 971.08, nor the procedures mandated by Bangert and its progeny, require a court to inform a defendant during a plea colloquy that he may plead guilty to a crime and still have a jury trial on the issue of mental responsibility.    Because the trial court was not required to inform Burton of this option, there was no deficiency in the plea colloquy.

¶81  The issue of whether a circuit court must engage the defendant in a personal colloquy on the option of a bifurcated trial on mental responsibility was carefully analyzed in State v. Francis, 2005 WI App 161, 285 Wis. 2d 451, 701 N.W.2d 632. In Francis, a defendant initially pled not guilty to several criminal charges and concurrently entered an NGI plea.    Id., ¶6. After a mental health examination concluded that the defendant's psychopathology would not support an NGI plea, the State offered the defendant a plea bargain that she accepted.    Id., ¶¶8-11. Pursuant to the plea agreement, the defendant withdrew her not guilty and NGI pleas and then pled guilty and no contest to several charges.    Id., ¶11.    In her postconviction motion, the

37

defendant alleged, inter alia, that "the circuit court erred when it accepted her pleas of guilty and no contest without ascertaining via a personal colloquy that [the defendant] intended to abandon her earlier NGI plea."  Id., ¶12.  The circuit court denied the motion in all respects.  Id., ¶13.

¶82  On review, the court of appeals concluded that circuit courts "engage in personal colloquies in order to protect defendants against violations of their fundamental constitutional rights."  Id., ¶1.  Because neither the federal constitution nor the Wisconsin Constitution confers a right to an insanity defense, a court has no obligation to personally address a defendant in regard to the withdrawal of an NGI plea.[21]  Id.

_____

[21] The United States Supreme Court has never held that a defendant has a constitutional right to present an affirmative insanity defense.  See, e.g., Medina v. California, 505 U.S. 437, 449 (1992) (citing Powell v. Texas, 392 U.S. 514, 536-37 (1968) ("[W]e have not said that the Constitution requires the States to recognize the insanity defense."); see also 22 C.J.S. Criminal Law § 501 (2013) ("There is no independent constitutional right to plead insanity as a defense to criminal charges.") (footnote omitted).

Several state courts also have concluded there is no federal constitutional right to an insanity defense.  See, e.g., State v. Bethel, 66 P.3d 840, 851 (Kan. 2003), cert. denied 540 U.S. 1006 (2003); State v. Herrera, 895 P.2d 359, 366 (Utah 1995); State v. Searcy, 798 P.2d 914, 919 (Idaho 1990) (noting that neither the federal constitution nor the state constitution contains any language setting forth any right to an insanity plea); State v. Korell, 690 P.2d 992, 999 (Mont. 1984) ("The United States Supreme Court has never held that there is a constitutional right to plead an insanity defense.").  See also Parkin v. State, 238 So. 2d 817, 822 (Fla. 1970).  Idaho, Kansas, Montana, and Utah have virtually abolished the insanity defense.  State v. Delling, 267 P.3d 709, 711 n.1 (Idaho 2011).

¶83  The <u>Francis</u> court did, however, offer this suggestion:

> While we hold that a personal colloquy is not required to withdraw an NGI plea, we believe it is nonetheless advisable for trial courts to engage in personal colloquy for at least two reasons: First, it helps satisfy the court that the defendant is aware and alert as to what is going on.  Second, the record is protected from later ineffective assistance of counsel claims where a convicted defendant might assert that counsel never discussed the NGI withdrawal.

<u>Id.</u>, ¶27 n.5.

¶84  We agree.  We believe it is the better practice for courts to engage the defendant in a personal colloquy on his or her withdrawal of an NGI plea.  It is also advisable for both defense counsel and the State to help the court make a record of the defendant's NGI plea withdrawal and his knowing, intelligent, and voluntary plea of guilty or no contest.[22]

¶85  In this case, the court, defense counsel, and the prosecutor were very diligent and professional at the plea hearing.  All of them worked together to ensure a complete

---

[22] One criminal practice manual suggests:

> The withdrawal of an NGI plea should be clearly noted on the record.  The court should question the defendant to ensure that the defendant agrees with the decision to withdraw the insanity defense and that the decision was based upon the advice of counsel.  A careful record of the plea's withdrawal will eliminate or minimize later time-consuming hearings on ineffective assistance of counsel or the assertion that the plea was withdrawn without the defendant's permission.

Christine M. Wiseman & Michael Tobin, 9 <u>Wis. Practice: Criminal Practice and Procedure</u> § 17:33, at 534–35 (2d ed. 2008).

record of Burton's knowing, intelligent, and voluntary entry of a guilty plea and withdrawal of an NGI plea.  The court engaged in a personal colloquy with Burton on whether he was making his plea voluntarily, whether he understood that he was waiving certain fundamental rights, and whether he was freely giving up his right to pursue an NGI defense.  Defense counsel went on record to establish that an expert had been retained who would support an NGI plea, but that Burton was accepting responsibility and pleading guilty.  The prosecutor also wanted the record to reflect that, despite having retained an expert on mental health and two competent defense attorneys, Burton was choosing to forgo an NGI defense and accept responsibility, a fact that Burton confirmed on the record.

¶86 Although the plea colloquy was sound, we take this opportunity to emphasize the important issue of mental illness in our state correctional system.  As of June 2008, 31 percent of all inmates incarcerated in adult correctional facilities in Wisconsin were identified as mentally ill.  Inmate Mental Health Care, Report 09-4, at 25, Legislative Audit Bureau, Madison, Wis.  During the period from June 2006 to June 2008, the number of mentally ill inmates increased from 6,084 to 6,957, or 14.3 percent.  Id. at 24.  While some mentally ill inmates are housed in specialized facilities, many are housed with other inmates.  Id. at 33.  Trained staff who provide therapy to mentally ill inmates and the resources for helping them are limited; hence, troubled individuals may not always get the mental health treatment they need.  See id. at 37-38.  While this sobering

information does not change our analysis or conclusion, it underscores the better practice of courts engaging in personal colloquies with defendants about the withdrawal of NGI pleas.[23]

¶87 Because Burton did not specifically plead to his lack of knowledge or understanding at the plea colloquy, and because there was no deficiency in the plea colloquy, we conclude that the circuit court properly rejected Burton's Bangert motion without an evidentiary hearing.

### V. CONCLUSION

¶88 We conclude, first, that Burton's Nelson/Bentley motion was insufficient. The motion asserted that Burton's two trial counsel were ineffective in not pursuing an NGI or "insanity" defense. The motion claimed that Burton's explicit withdrawal of that defense as part of a plea agreement must have been based upon a failure by trial counsel to inform Burton that he had the option of pleading guilty to the crimes but also not guilty by reason of mental disease or defect. Significantly, Burton's motion never alleged that his trial counsel failed to inform Burton of this option. Instead, it merely pointed to the

---

[23] See generally Report of the Chief Justice's Task Force on Criminal Justice and Mental Health (Sept. 2010). The Task Force's mission was "to develop models of research-based, cost-effective intervention processes that can be implemented to improve responses of the criminal justice system to persons with mental illness." Id. at 1. The Task Force's report highlights current initiatives across the state that both "improve public safety and the plight of persons with mental illnesses who come into contact with the criminal justice system." Id. at 5. The report also inventories gaps in the criminal justice and mental health systems, and suggests programs and procedures to institute statewide. Id.

absence of evidence in the record that indicated that counsel had explained this option to Burton. The absence of record evidence in this situation is not enough. A defendant must affirmatively plead facts that, if true, would constitute deficient performance of counsel. Moreover, even if deficient performance had been properly pled, Burton's motion did not affirmatively assert that if trial counsel had informed him of the option of a trial focused solely upon mental responsibility, he would have chosen that option and why he would have chosen it.

¶89 The sufficiency of a Nelson/Bentley motion is critical because the defendant has the burden of proof in a Nelson/Bentley hearing. A Nelson/Bentley hearing is an evidentiary hearing in which a defendant is permitted to prove a claim that his attorney was constitutionally ineffective; it is not a fishing expedition to try to discover error.

¶90 We conclude, second, that Burton's claim of a Bangert violation also was insufficient. Burton failed to state that, due to a defect in the plea colloquy, he did not enter his pleas knowingly, intelligently, and voluntarily. Because Burton did not allege his lack of personal understanding about some aspect of the plea process, no evidentiary hearing was necessary. In any event, we do not find any defect in the plea colloquy. The circuit court properly inquired as to whether Burton was entering his guilty pleas knowingly, intelligently, and voluntarily. The circuit court's inquiry not only followed standard procedure, but also asked whether Burton was knowingly,

42

intelligently, and voluntarily withdrawing his NGI plea and giving up the right to present an insanity defense.

¶91 We reject Burton's claim of a _Bangert_ violation because defendants do not have a fundamental right to an insanity plea, and it is not essential to conduct an extensive colloquy about NGI procedure before a defendant withdraws his plea of not guilty by reason of mental disease or defect. Looking forward, we do think it is better practice for circuit courts to conduct a personal colloquy on the bifurcated NGI plea and trial option to confirm the defendant's understanding of the law and to head off later claims of a _Bangert_ violation or ineffective assistance of counsel.

¶92 _By the Court._—The decision of the court of appeals is affirmed.