# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP46-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |        Plaintiff-Respondent, |
| |    v. |
| | Jimothy A. Jenkins, |
| |        Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION OF THE COURT OF APPEALS
Reported at 346 Wis. 2d 280, 827 N.W.2d 929
(Ct. App. 2013 – Unpublished)

| | |
|---|---|
| OPINION FILED: | July 11, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 8, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Milwaukee |
|   JUDGE: | Carl Ashley |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | CROOKS, J., concurs. (Opinion filed.) |
|   DISSENTED: | ZIEGLER, GABLEMAN, JJ., dissent. Opinion filed. |
|   NOT PARTICIPATING: | |

ATTORNEYS:

    For the defendant-appellant-petitioner, there were briefs by *Joseph E. Redding*, West Allis, and oral argument by *Joseph E. Redding*.

    For the plaintiff-respondent, the cause was argued by *Aaron O'Neill*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP46-CR
(L.C. No. 2007CF1225)

STATE OF WISCONSIN : IN SUPREME COURT

**State of Wisconsin,**

     **Plaintiff-Respondent,**

    **v.**

**Jimothy A. Jenkins,**

     **Defendant-Appellant-Petitioner.**

**FILED**

**JUL 11, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and remanded.*

¶1 SHIRLEY S. ABRAHAMSON, C.J. The defendant, Jimothy A. Jenkins, seeks review of an unpublished decision of the court of appeals affirming a judgment and order of the Circuit Court for Milwaukee County, Carl Ashley and Rebecca F. Dallet, Judges.[1]

---

[1] State v. Jenkins, No. 2012AP46-CR, unpublished slip op. (Wis. Ct. App. Jan. 15, 2013).

The Honorable Carl Ashley entered the judgment of conviction and imposed sentence. The Honorable Rebecca F. Dallet entered the order denying Jenkins' postconviction motion.

¶2    A jury found the defendant guilty of one count of first-degree intentional homicide, as a party to a crime, with use of a dangerous weapon, contrary to Wis. Stat. §§ 940.01(1)(a), 939.05, and 939.63 (2007-08);[2] one count of first-degree reckless injury, party to a crime, with the use of a dangerous weapon, contrary to Wis. Stat. §§ 940.23(1)(a), 939.05, and 939.63; and one count of possession of a firearm by a felon, contrary to Wis. Stat. § 941.29(2).

¶3    After trial, the defendant brought a postconviction motion seeking a new trial on the grounds that he had ineffective assistance of trial counsel and that a new trial was required in the interest of justice.[3]

¶4    After an evidentiary Machner[4] hearing, the circuit court denied the defendant's postconviction motion seeking a new trial, determining that the defendant's trial counsel was not

_____

[2] All subsequent references to the Wisconsin Statutes are to the 2007-08 version unless otherwise indicated.

[3] Wisconsin Stat. § 805.15(1) reads as follows:

(1) Motion. A party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice. Motions under this subsection may be heard as prescribed in s. 807.13. Orders granting a new trial on grounds other than in the interest of justice, need not include a finding that granting a new trial is also in the interest of justice.

[4] State v. Machner, 101 Wis. 2d 79, 303 N.W.2d 633 (1981).

2

ineffective and that a new trial was not required in the interest of justice. The court of appeals affirmed the circuit court.

¶5 The defendant raises two issues on review.

¶6 First, did the defendant receive ineffective assistance of trial counsel when defense trial counsel failed to present testimony at trial of potentially exculpatory witnesses, namely an eyewitness other than the State's witness and witnesses with evidence that another person committed the homicide for which the defendant was convicted?

¶7 Second, did the court of appeals err in refusing to order a new trial in the interest of justice under the court of appeals' discretionary reversal authority pursuant to Wis. Stat. § 752.35?[5]

¶8 We address only the issue of whether the defense trial counsel was ineffective for failing to call the eyewitness Cera

---

[5] Wisconsin Stat. § 752.35, governing discretionary reversal by the court of appeals, reads as follows:

Discretionary reversal. In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

Jones to testify at trial. We conclude, under the totality of the circumstances in the instant case, that the defendant has demonstrated both prongs of the test for ineffective assistance of counsel as articulated in Strickland v. Washington, 466 U.S. 668 (1984): trial counsel's deficient performance that did not meet the standard of objective reasonableness, and prejudice against the defendant that resulted from the trial counsel's deficient performance.

¶9 Consequently, we reverse the decision of the court of appeals and remand the cause to the circuit court for a new trial.[6]

I

¶10 The facts in the instant case are undisputed for the purposes of this appeal.

¶11 On March 23, 2007, the car in which Toy Kimber and Anthony Weaver were traveling ran out of gas near 2100 North 38th Street in Milwaukee. Kimber lived seven blocks away on 45th Street.

¶12 After leaving the car, the two men met two young women, one of whom was Cera Jones. Kimber admitted to buying $10 worth of marijuana from Jones. During their conversation, a car drove past them, made a U-turn, and drove towards the four individuals. A man exited the car's rear seat holding a rifle.

---

[6] We need not and do not address whether defense trial counsel was ineffective in any other respects, and we do not address whether the court of appeals erred in failing to exercise its discretionary reversal authority to order a new trial in the interest of justice.

He shot at Kimber and Weaver, injuring Kimber in the leg and killing Weaver. The shooter then reentered the vehicle and the vehicle drove away.

¶13 Immediately after the shooting, police officers talked to both Kimber and Jones. Kimber initially told police that he did not know the shooter. Jones initially told police that she could not see the shooter's face because it was dark and he was wearing a hood.

¶14 The next morning, March 24, 2007, Kimber was re-interviewed by the police and shown a photo array, which included the defendant. Kimber identified the defendant as the shooter. Kimber had known the defendant for at least three years and may have seen the defendant earlier in the evening.

¶15 Jones was re-interviewed by the police on April 1, 2007. Jones told police that she had not seen the shooter before. She stated that the shooter had a clean-shaven baby face and medium complexion and that he did not have acne scars. Jones was also shown a photo array, which included the defendant. She did not select the defendant from the array. In a statement attached to the defendant's postconviction motion, Jones attests that she also gave a statement that the defendant was definitely not the shooter and that she had seen the defendant across the street minutes after the shooting occurred. The police report does not include these two statements.

¶16 The defendant was arrested and charged. While awaiting trial, the defendant shared a jail pod with Corey Moore and Christopher Blunt. According to statements and affidavits

in the defendant's motion for a new trial, while in jail, Blunt recognized the defendant and admitted that he [Blunt] had committed the shooting. Moore stated that he overheard this conversation.

¶17 The defendant brought the conversation with Blunt to his attorney's attention. Defense trial counsel then informed the prosecutor in writing of Blunt's and Moore's statements. Defense trial counsel did not further interview Blunt or Moore.

¶18 At trial, Kimber's testimony that the defendant was the shooter was the only evidence that directly tied the defendant to the shooting.[7] Kimber testified that on the night of the shooting, prior to being shown a photo array, he identified the defendant as the shooter.[8] On being shown the photo array, Kimber identified the defendant. Kimber additionally testified that there was a history of disputes between people living around 45th Street, such as himself, and people living around 38th Street, such as the defendant.

---

[7] The State and the defendant each called witnesses to testify at trial. For example, the State called various police officers who responded to the crime scene and conducted interviews and photo arrays. The State also called a witness who allegedly told police that he had seen the defendant hold a firearm similar to the one used in the shooting and a witness who allegedly told police that she was in the defendant's alleged alibi location and did not see the defendant. None of these witnesses introduced evidence that directly connected the defendant to the shooting.

[8] Police officers testified that at the scene of the shooting Kimber said he did not know who shot him.

6

¶19 In contrast, the defendant testified that he was in the home of Daniel McFadden at the time of the shooting. McFadden's home is across the street from the scene of the shooting.

¶20 McFadden testified that the defendant was asleep and that he woke the defendant when the shots were fired. On cross-examination, McFadden also testified that immediately following the shooting, he told police officers that he had not seen the defendant at the time of the shooting and had last seen him around 2 p.m. that afternoon.

¶21 The State and the defendant stipulated that Kimber had five adult convictions and four juvenile adjudications, that the defendant had two prior juvenile adjudications, and that McFadden had one adult conviction and three juvenile adjudications.

¶22 The jury convicted the defendant of the crimes charged.

¶23 The defendant moved for a new trial in a postconviction motion based upon both (1) ineffective assistance of counsel for failing to investigate, subpoena, and present witnesses who would have supported the proposition that the defendant was not the shooter; and (2) the interest of justice. Attached to the postconviction motion were signed statements by Jones and Moore obtained by the defendant's postconviction counsel's investigator and the investigator's report regarding a conversation with Blunt.

7

¶24 The circuit court granted a <u>Machner</u> evidentiary hearing.

¶25 At the <u>Machner</u> hearing, the parties stipulated that Moore and Blunt would have testified similarly to the statements they gave to the investigator. Moore's statement attests that while sharing a jail pod, Blunt made statements to the defendant admitting to the shooting of Kimber and Weaver. The investigator's report about Blunt indicates that Blunt denied making those statements and denied knowing the defendant.

¶26 At the <u>Machner</u> hearing, defense trial counsel testified that his notes regarding individual witnesses had been destroyed in a flood. He stated that his trial strategy was twofold——attacking the credibility of the victim eyewitness, Kimber, and providing an alibi for the defendant.

¶27 In response to questions about why he did not call Jones as a witness, defense trial counsel testified as follows:

- He was uncertain whether he met with Jones; he could not specifically recall whether he had met or interviewed Jones;

- He could not recall why he did not call Jones as a witness;

- He could not recall why or whether Jones's testimony would have fit with the theory of the case;

- He would have read police reports detailing Jones's testimony;

- He could not recall discussing the photo array with Jones; and

8

- He could not recall why he did not discuss Jones's photo array with the relevant police officer.

¶28 At the hearing, Jones testified that:

- She did not identify the defendant in the photo array;

- She told officers that the shooter had a smooth baby face, which the defendant does not have;

- She told the officers that the defendant was not the shooter;

- She knew the defendant from the neighborhood;

- She spoke with defense trial counsel on multiple occasions but was not contacted afterwards or subpoenaed to be called as a witness; and

- On the evening of the shooting, she told officers that she could see the shooter's face before he put his hood up.

¶29 Regarding why he did not call either Moore or Blunt as a witness, defense trial counsel testified as follows:

- He never talked to Blunt;

- He believed that Moore would have been "credible";

- He requested that the prosecutor interview Moore;

- He could not recall whether he or his investigator ever talked to Moore; and

- Moore's counsel told him that Moore would not testify.

¶30 The circuit court denied the motion for a new trial both with regard to ineffective assistance of counsel and the interest of justice.

¶31 The circuit court reasoned that trial counsel was not ineffective because (1) Jones would "not come across as a credible witness" and in any event "there is not a reasonable probability that the result of the proceeding would have been different,"[9] and (2) the statements of other witnesses whom defense counsel had not called at trial "would not have come in" under hearsay rules.[10]

---

[9] The circuit court stated its reasoning at the Machner hearing as follows:

> And the reasons that I think that the defense can't meet that burden [of prejudice] is because I think there are just way too many inconsistencies with Miss Jones' statements and I think all of what she testified to is frankly she just did not come across as a credible witness. I'm going to go through those specifics that show that I don't believe that she was credible and I think that the jury would have had difficulty with some of these statements as well.
>
> . . . .
>
> So I just think that given the contradictions in her testimony, I don't find her credible. I think she would have been impeached on the stand with all these statements and her descriptions kept changing. And I think that based on that, even if she had testified, there is not a reasonable probability that the result of the proceeding would have been different.

[10] The circuit court stated its reasoning at the Machner hearing as follows:

> I just think in terms of a hearsay analysis at that point, that those statements just would not have come in in that way. We'd have an alleged statement overheard by someone who isn't available, essentially not testifying, not being made available by his attorney. . . . And then to try to get in what he supposedly heard someone else say who also is saying he didn't say it, it really is so attenuated. I just

10

¶32 The circuit court also decided for the same reasons that the interest of justice did not necessitate a new trial.

¶33 The court of appeals affirmed the circuit court order denying the motion for a new trial for ineffective assistance of counsel and denying the motion for a new trial in the interest of justice.

## II

¶34 Criminal defendants are guaranteed the right to effective counsel by the United States and Wisconsin Constitutions.[11] The benchmark for judging any claim of ineffective assistance of counsel is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.[12]

¶35 Whether a defendant received ineffective assistance of trial counsel is a two-part inquiry under Strickland v. Washington, 466 U.S. 668 (1984).[13] A defendant must show both

---

don't think that there is that reliability of which hearsay statements are based on so as to allow that to come in in that fashion.

[11] U.S. Const. Amends. VI and XIV; Wis. Const. art. I, § 7.

[12] State v. Domke, 2011 WI 95, ¶34, 337 Wis. 2d 268, 805 N.W.2d 364 (citing State v. Trawitzki, 2001 WI 77, ¶39, 244 Wis. 2d 523, 628 N.W.2d 801 (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984))).

[13] State v. Carter, 2010 WI 40, ¶21, 324 Wis. 2d 640, 782 N.W.2d 695 (quoting Strickland, 466 U.S. at 687).

(1) that counsel performed deficiently; and (2) that the deficient performance prejudiced the defendant.[14]

¶36 When reviewing whether counsel performed deficiently, the Strickland standard requires that the defendant show that his counsel's representation fell below an objective standard of reasonableness considering all the circumstances.[15] A court is highly deferential to the reasonableness of counsel's performance. A court must make every effort to reconstruct the circumstances of counsel's challenged conduct, to evaluate the conduct from counsel's perspective at the time, and to eliminate the distorting effects of hindsight.[16] Strategic decisions made after less than complete investigation of law and facts may still be adjudged reasonable.[17] "Just as a reviewing court should not second guess the strategic decisions of counsel with the benefit of hindsight, it should also not construct strategic defense which counsel does not offer."[18]

¶37 Even if counsel's performance was deficient, a defendant must also show prejudice by demonstrating that there

---

[14] Domke, 337 Wis. 2d 268, ¶33 (citing Strickland, 466 U.S. at 687).

[15] Carter, 324 Wis. 2d 640, ¶22.

[16] Id.

[17] Id., ¶23.

[18] Harris v. Reed, 894 F.2d 871, 878 (7th Cir. 1990) (concluding that trial counsel was deficient for failing to offer a strategic reason for not calling potentially exculpatory witnesses).

is a reasonable probability that the errors "had an adverse effect on the defense."[19] The proper test for prejudice in the context of ineffective assistance of counsel is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[20] The required showing of prejudice is that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[21] A defendant fails to demonstrate prejudice if it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.[22]

¶38 Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact.[23] This court will uphold the circuit court's findings of fact, including the circumstances of the case and the counsel's conduct and

---

[19] State v. Burton, 2013 WI 61, ¶49, 349 Wis. 2d 1, 832 N.W.2d 611 (quoting Strickland, 466 U.S. at 693). See also Wis. Stat. § 805.18 (harmless error rule, made applicable to criminal proceedings by § 972.11(1)).

[20] Burton, 349 Wis. 2d 1, ¶49 (quoting Strickland, 466 U.S. at 693).

[21] Strickland, 466 U.S. at 687.

[22] State v. Weed, 2003 WI 85, ¶2, 263 Wis. 2d 434, 666 N.W.2d 485 (quoting State v. Harvey, 2002 WI 93, ¶44, 254 Wis. 2d 442, 647 N.W.2d 189).

[23] Domke, 337 Wis. 2d 268, ¶33.

strategy, unless they are clearly erroneous.[24] Whether counsel's performance satisfies the standard for ineffective assistance of counsel is a question of law which we determine independently of the circuit court and court of appeals, benefiting from their analysis.[25]

¶39 We turn to the arguments relating to defense trial counsel's ineffective assistance of counsel.

III

¶40 We first address whether defense trial counsel's representation fell below the objective standard of reasonably effective assistance.[26]

¶41 Failure to call a potential witness may constitute deficient performance. In Toliver v. Pollard, 688 F.3d 853, 862 (7th Cir. 2012), the court declared that "in a 'swearing match' between two sides, counsel's failure to call two useful, corroborating witnesses, despite [potential bias as a result of] the family relationship, constitutes deficient performance."[27] See also Goodman v. Bertrand, 467 F.3d 1022, 1030 (7th Cir. 2006) (the testimony of witnesses who would corroborate the

---

[24] State v. Thiel, 2003 WI 111, ¶21, 264 Wis. 2d 571, 665 N.W.2d 305.

[25] State v. Neumann, 2013 WI 58, ¶141 n.87, 348 Wis. 2d 455, 832 N.W.2d 560; Domke, 337 Wis. 2d 268, ¶33 (citing Thiel).

[26] Domke, 337 Wis. 2d 268, ¶36.

[27] Toliver v. Pollard, 688 F.3d 853, 862 (7th Cir. 2012) (quoting Goodman v. Bertrand, 467 F.3d 1022, 1033 (7th Cir. 2006)).

14

defendant's account was a "crucial aspect of [the] defense"); State v. White, 2004 WI App 78, ¶¶20-21, 271 Wis. 2d 742, 680 N.W.2d 362 (trial counsel's performance was deficient for failure to call witnesses who would have brought in evidence that "went to the core of [the] defense.").

¶42 Defense trial counsel's deficient performance is clear from the record. He knew of Jones. He knew she was an eyewitness and could testify about the shooting. He knew her statements would contradict or impeach the eyewitness upon whom the prosecution's entire case relied, Kimber. He knew that Jones had not identified the defendant on the night of the shooting and that she did not identify him when she examined a photo array.

¶43 Jones's testimony fit defense trial counsel's professed trial strategy of discrediting and impeaching the State's witness.

¶44 Similarly, Jones's eyewitness testimony would corroborate the defendant's version of events and support defense trial counsel's professed alibi defense. Jones would have testified that she saw the defendant across the street immediately after the shooting.

¶45 A failure to call a key witness, however, does not always necessarily constitute deficient performance. The failure to call a witness may have been a reasonable trial strategy.

¶46 The record is devoid of any reasonable trial strategy to support defense trial counsel's not calling Jones as a witness at trial.

¶47 At the Machner hearing, defense trial counsel could give no reason why he did not call Jones as a trial witness. Indeed, defense trial counsel could not even recall having met with Jones, let alone provide a reason for why he chose not to call her as an witness at trial. We cannot figure out any reasonable trial strategy.

¶48 For the reasons set forth, we conclude that defense trial counsel's representation fell below the objective standard of reasonably effective assistance.

IV

¶49 As noted above, once deficient performance is established, the defendant must demonstrate that the deficient performance was prejudicial. To demonstrate prejudice, the defendant must show that, absent defense trial counsel's errors, there was a reasonable probability of a different result.

¶50 Our prejudice analysis is necessarily fact-dependent. Whether counsel's deficient performance satisfies the prejudice prong of Strickland depends upon the totality of the circumstances at trial.[28] The circuit court and court of appeals determined that because of inconsistencies in Jones's statements in the initial police report, the second police report, the postconviction motion papers, and the Machner hearing testimony,

---

[28] Thiel, 264 Wis. 2d 571, ¶62.

16

the defendant did not demonstrate a reasonable probability that had Jones been called as a witness the result would have been different.[29] We disagree with these courts.

¶51 Looking at the totality of the evidence in the trial, we hold that the defendant sufficiently demonstrated a reasonable probability that a different result would have occurred but for the failure to call Jones.

¶52 The State's case rested almost completely on the testimony of one eyewitness, the victim Kimber. The defense offered no contradictory eyewitness testimony. No physical evidence directly tied the defendant to the shooting.

¶53 In such a case, contradictory eyewitness testimony supporting the defendant would expose vulnerabilities at the center of the State's case. When defense trial counsel knew about Jones and that she could contradict the prosecution's central eyewitness testimony, the excluded contradictory eyewitness would have contributed strongly to doubts regarding the prosecution's case. See United States ex rel. Hampton v. Leibach, 347 F.3d 219 (7th Cir. 2003) (concluding that failure to call key witnesses in a case with no physical evidence was prejudicial).

¶54 Jones's testimony also would have supported the defendant's own testimony that the defendant was in a

---

[29] State v. Jenkins, No. 2012AP46-CR, unpublished slip op. ¶¶15-17 (Wis. Ct. App. Jan. 15, 2013).

17

neighboring house at the time of the shooting and came out afterwards.

¶55 Although Jones's statements were not necessarily consistent over time, and her credibility could be challenged, Kimber, the prosecution's key eyewitness, had similar if not more substantial credibility problems.

¶56 The circuit court noted that Jones's description of the shooter got "better and better as time [went] on," but the same characterization could be applied to the statements of the prosecution witness, Kimber, whose memory of the shooting seemed to improve the day after the shooting. On the night of the shooting, he told police that he could not identify the shooter. The next morning, he affirmatively identified the defendant in a photo array. At trial, he averred that he did actually identify the defendant on the night of the shooting, even though the police report and an officer's testimony contradicted him.

¶57 The court of appeals noted that Jones was inconsistent in describing her involvement in a marijuana sale earlier in the evening. Yet Kimber was involved in the same transaction, with similarly inconsistent testimony.

¶58 The parties appear not to dispute that Jones's credibility was not subject to attack by a prior criminal conviction. Kimber, the State's key eyewitness, had nine prior convictions or juvenile adjudications; his prior convictions may be used to attack his credibility.[30]

---

[30] See Wis. Stat. § 906.09; State v. Gary M.B., 2004 WI 33, ¶21, 270 Wis. 2d 62, 676 N.W.2d 475.

18

¶59 In the particular credibility contest in the present case, in which

- both eyewitnesses had inconsistencies in their statements;
- the prosecution eyewitness had an extensive criminal record and (as far as the record shows) the defense eyewitness had none;
- the entire basis of the prosecution's case rested on its eyewitness identification; and
- no physical or other evidence directly tied the defendant to the crime;

we hold that the failure to call Jones as a witness at trial to give testimony contradictory to that of the State's eyewitness had a reasonable probability of affecting the result of the case.

¶60 As Strickland notes, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Strickland, 466 U.S. at 696.

¶61 Our conclusion that defense trial counsel's deficient performance in the instant case was prejudicial is supported by Washington v. Smith, 219 F.3d 620, 633-34 (7th Cir. 2000), in which the court granted relief because defense trial counsel's error was prejudicial in "crippl[ing]" the defendant's defense by excluding entirely the testimony that would have most supported the defendant's theory. The Washington court declared that the additional witnesses themselves had weaknesses and

potential inconsistencies, but "the mere fact that some negative evidence would have come in with the positive does not eliminate the prejudicial effect of leaving corroborative evidence unintroduced" and inconsistencies in the prosecution's own witnesses' testimony made it more likely that the additional corroboration of alibi witnesses would change the result of the case.

¶62 Wisconsin case law has similarly recognized that when a potential witness "would have added a great deal of substance and credibility" to the defendant's theory and when the witness "could not have been impeached as having a criminal record," the exclusion of the witness's testimony is prejudicial, even if the witness's credibility could be impeached. State v. Cooks, 2006 WI App 262, ¶63, 297 Wis. 2d 633, 726 N.W.2d 322.

¶63 The court of appeals in Cooks, quoting the federal Washington case, 219 F.3d at 634, noted that "the mere fact that some negative evidence would have come in with the positive does not eliminate the prejudicial effect of leaving corroborative evidence unintroduced." Cooks, 297 Wis. 2d 633, ¶63.

¶64 In assessing the prejudice caused by the defense trial counsel's performance, i.e., the effect of the defense trial counsel's deficient performance, a circuit court may not substitute its judgment for that of the jury in assessing which testimony would be more or less credible.[31]

---

[31] In contrast, in a Machner hearing, a circuit court may weigh the credibility of the witnesses, including trial counsel, in assessing the deficiency and reasonableness of the trial counsel's performance.

¶65 State v. Guerard, 2004 WI 85, 273 Wis. 2d 250, 682 N.W.2d 12, demonstrates this principle. In Guerard, the court concluded that defense counsel in that case was deficient in failing to call a witness. The court held that despite the internal inconsistencies and credibility concerns regarding that witness's testimony, defense counsel's deficient performance was prejudicial. The perceived weaknesses in the witness's testimony "would have been a factor for the jury to consider . . . . The jury would have had to determine the weight and credibility to assign" to the witness's statements.[32]

¶66 Taking into account all the circumstances of the case, we conclude that defense trial counsel's performance was prejudicial to the defendant; there is a reasonable probability that the result of the proceeding would have been different had defense trial counsel called Jones to testify at trial.

* * * *

¶67 We conclude, under the totality of the circumstances in the instant case, that the defendant has demonstrated both prongs of the test for ineffective assistance of counsel as articulated in Strickland, 466 U.S. 668: trial counsel's deficient performance that did not meet the standard of objective reasonableness, and prejudice against the defendant that resulted from the trial counsel's deficient performance.

---

[32] State v. Guerard, 2004 WI 85, ¶¶46, 49, 273 Wis. 2d 250, 682 N.W.2d 12.

¶68 Consequently, we reverse the decision of the court of appeals and remand the cause to the circuit court for a new trial.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded for a new trial.

¶69 N. PATRICK CROOKS, J. *(concurring).* Because I agree that the defendant was denied his constitutional right to effective assistance of counsel as a result of trial counsel's failure to present the eyewitness testimony of Cera Jones at trial, I join the majority opinion. However, I write separately to provide guidance on an issue of central importance not fully addressed by the majority in this case, namely, whether the circuit court properly scrutinized and weighed the credibility of Jones's testimony in applying the prejudice prong of the ineffective assistance of counsel test set forth in Strickland v. Washington, 466 U.S. 668 (1984). The propriety of the circuit court's decision in this regard presents an issue that was both briefed and argued before us.

¶70 As correctly noted by the majority, the test for determining whether a defendant received ineffective assistance of counsel is two-pronged. State v. Carter, 2010 WI 40, ¶21, 324 Wis. 2d 640, 782 N.W.2d 695 (citing Strickland, 466 U.S. at 687). The first prong requires the defendant to show that trial counsel's performance was deficient. Id. The second prong requires the defendant to prove that trial counsel's deficient performance prejudiced the defense. Id.

¶71 In discussing the issue of ineffective assistance, the circuit court focused on the credibility of Jones, in regard to the prejudice prong of the Strickland analysis, rather than on the matter of deficient performance of the defendant's counsel.[1]

---

[1] The record is clear that the circuit court made no findings of fact—credibility or otherwise—with respect to trial counsel's deficient performance.

1

The circuit court ultimately concluded that trial counsel was not ineffective for failing to call Jones to testify at trial. The circuit court reasoned that, even if trial counsel's failure to call Jones was deficient, such an unprofessional error did not prejudice the defendant because there was not a reasonable probability that Jones's testimony would have altered the outcome of the trial in light of her failure to come across as a credible witness.

¶72 The circuit court erred in discrediting Jones's testimony for two reasons. First, the general rule in Wisconsin is that issues of witness credibility and the weight to be given to their testimony are matters for the jury to decide. State v. Friedrich, 135 Wis. 2d 1, 16, 398 N.W.2d 763 (1987). Second, a defendant attempting to establish prejudice for purposes of an ineffective assistance of counsel claim need only show a reasonable probability that, but for counsel's unprofessional error, the outcome of the trial would have been different. State v. Thiel, 2003 WI 111, ¶20, 264 Wis. 2d 571, 665 N.W.2d 305 (quoting Strickland, 466 U.S. at 694). As to the latter point, "reasonable probability" does not mean "more likely than not." State v. Dyess, 124 Wis. 2d 525, 544, 370 N.W.2d 222 (1985) (citing Strickland, 466 U.S. at 693).

¶73 A proper application of the above legal principles to the facts of this case would require the circuit court to consider the following questions in assessing whether trial counsel's error in failing to call Jones prejudiced the defendant: (1) Was Jones's testimony within the realm of

2

believability in light of the totality of circumstances of the case?; and (2) Was Jones's testimony materially beneficial to the defendant's theory of the case?

¶74 Had the circuit court limited its inquiry to these questions, it would have correctly reserved questions as to the credibility and significance of Jones's testimony for the jury.

I.

¶75 A criminal defendant has a fundamental right to a trial by jury guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 7 of the Wisconsin Constitution. State v. Anderson, 2002 WI 7, ¶10, 249 Wis. 2d 586, 638 N.W.2d 301. Consistent with this fundamental right, Wisconsin law provides that it is ordinarily the task of a jury to decide both the credibility of a witness and the weight to be given to his or her testimony. Friedrich, 135 Wis. 2d at 16. This principle is confirmed by Wis JI—Criminal 300, which instructs,

> It is the duty of the jury to scrutinize and to weigh the testimony of witnesses and to determine the effect of the evidence as a whole. You are the sole judges of the credibility, that is, the believability of the witnesses and of the weight to be given to their testimony.

¶76 While under certain circumstances it is possible for a circuit court to determine that a witness's testimony is incredible as a matter of law, it must be cognizant that "[e]ven though there be glaring discrepancies in the testimony of a witness at trial, or between his [or her] trial testimony and his [or her] previous statements, that fact in itself does not

3

result in concluding as a matter of law that the witness is wholly incredible." Ruiz v. State, 75 Wis. 2d 230, 232, 249 N.W.2d 277 (1977). Instead, "the question is whether the factfinder believes one version rather than another or chooses to disbelieve the witness altogether. Only a question of credibility . . . is raised. That question [is] one for the jury." Id.; see also McFowler v. Jaimet, 349 F.3d 436, 454 (7th Cir. 2003) ("Inconsistencies in a witness's testimony are not unusual either, and normally these are left for the factfinder to assess."). A court should not substitute its judgment for that of the factfinder in this regard except where the evidence is inherently or patently incredible. Gauthier v. State, 28 Wis. 2d 412, 416, 137 N.W.2d 101 (1965), cert denied, 383 U.S. 916 (1966).

## II.

¶77 The legal principle that it is normally the province of the jury to scrutinize and weigh the testimony of witnesses in criminal cases must apply when a circuit court is addressing the prejudice prong of a claim for ineffective assistance. See majority op., ¶64. Adhering to this legal principle in the context of ineffective assistance is entirely consistent with the test for determining prejudice set forth in Strickland.

¶78 As noted, the test for prejudice asks whether there is a reasonable probability that, but for counsel's unprofessional error, the result of the trial would have been different. State v. Domke, 2011 WI 95, ¶54, 337 Wis. 2d 268, 805 N.W.2d 364 (quoting Strickland, 466 U.S. at 694). In the context of a

4

criminal conviction, "'the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" Id. (quoting Strickland, 466 U.S. at 695). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694).

¶79 Importantly, in order to establish prejudice, a defendant need not show that counsel's unprofessional error more likely than not altered the outcome of the case. Dyess, 124 Wis. 2d at 544 (citing Strickland, 466 U.S. at 693). Thus, where a circuit court requires a defendant to convince the court as to the believability of an uncalled witness in order to establish prejudice, it not only ignores the role that a factfinder typically plays in determining the guilt or innocence of a defendant, it also imposes a heightened burden on the defendant that was expressly considered and rejected by the United States Supreme Court in Strickland.

¶80 Unfortunately, we have not specifically addressed the propriety of a circuit court's decision to scrutinize and weigh the credibility of an uncalled witness for purposes of assessing the prejudice prong of a claim for ineffective assistance. The result is that we have produced opinions reflecting somewhat inconsistent views on the topic.

¶81 For example, in State v. Vennemann, 180 Wis. 2d 81, 97, 508 N.W.2d 404 (1993), we briefly addressed the issue in a case involving a claim of ineffective assistance based on trial counsel's failure to call a witness. Specifically, we agreed

5

with the circuit court's conclusion that the outcome of the trial would not have been different had the testimony of the uncalled witness been presented at trial because the uncalled witness "could have been easily impeached by other inconsistent testimony." Id.

¶82 Conversely, in State v. Guerard, 2004 WI 85, ¶49, 273 Wis. 2d 250, 682 N.W.2d 12, another case involving a claim of ineffective assistance based on trial counsel's failure to call certain witnesses, we concluded that the defendant had satisfied his burden of establishing prejudice notwithstanding the "the strength of the victim's testimony and the existence of some inconsistency between [the victim's] testimony and [the exculpatory confession that was the subject of the uncalled witness' testimony]. . . ." Although the circuit court in Guerard had not made an explicit credibility determination with respect to the substance of the uncalled witness' testimony, as was the case in Vennemann, we nevertheless explained that it was the proper role of the jury to determine the weight and credibility to assign to the exculpatory confession at issue. Id.

¶83 When it comes to the correctness of a circuit court's decision to scrutinize and weigh the credibility of an uncalled witness for purposes of assessing prejudice in the context of ineffective assistance, Guerard provides the better approach. That is to say, Guerard's approach is more consistent with controlling legal principles in Wisconsin, whereas Vennemann's approach is not. Specifically, the court's discussion in

6

Vennemann does not appear to contemplate that: (1) the well-established rule in Wisconsin is that witness credibility determinations in criminal cases are generally reserved for the jury;[2] and (2) reasonable probability for purposes of Strickland's prejudice prong does not require a defendant to show that it is more likely than not that a new trial would produce a different result.[3]

¶84 That Guerard provides the better approach toward dealing with a circuit court's ability to make credibility determinations in assessing prejudice for purposes of an ineffective assistance claim is confirmed by the United States Court of Appeals for the Sixth Circuit. In Ramonez v. Berghuis, 490 F.3d 482, 490 (6th Cir. 2007), the United States Court of Appeals for the Sixth Circuit held that a state circuit court erred in discrediting the testimony of three potential witnesses when assessing whether trial counsel's failure to investigate those witnesses prejudiced the defense, in violation of the defendant's constitutional right to effective assistance of counsel. The Ramonez court refused to defer to the circuit court's assessment as to the lack of credibility and helpfulness of the witnesses, reasoning in pertinent part that "our

---

[2] See, e.g., State v. Friedrich, 135 Wis. 2d 1, 16, 398 N.W.2d 763 (1987) ("The credibility of witnesses and the weight given to their testimony are matters left to the jury's judgment.").

[3] State v. Pitsch, 124 Wis. 2d 628, 641, 369 N.W.2d 711 (1985) (explaining that, in establishing prejudice in the context of an ineffective assistance of counsel claim, a defendant need not demonstrate that counsel's deficient error more likely than not altered the outcome of the trial.).

Constitution leaves it to the jury, not the judge, to evaluate the credibility of witnesses in deciding a criminal defendant's guilt or innocence." Id.

¶85 We have approved a similar approach to that of Guerard and Ramonez in addressing the standard for a "reasonable probability of a different outcome" in a case involving the recantation of a witness's testimony. In State v. McCallum, 208 Wis. 2d 463, 468, 561 N.W.2d 707 (1997), we considered the defendant's motion for a new trial based on newly discovered evidence: the victim's recantation of her accusation of sexual assault. In denying the defendant's motion, the circuit court determined that the victim's recantation was less credible than her accusation; as a result, the circuit court reasoned that the defendant had failed to establish a reasonable probability of a different result at a new trial. Id. at 474.

¶86 On review, we concluded that the circuit court "employed the wrong legal standard when determining that there was not a reasonable probability of a different outcome." Id. at 475-76. We explained that the proper standard asked whether there was a reasonable probability that a jury, looking at both the accusation and the recantation, would have a reasonable doubt respecting the defendant's guilt. Id. at 474. Accordingly, we were troubled by the circuit court's determination that a finding of "less credible" led to a conclusion of "no reasonable probability of a different

8

outcome," because "less credible is far from incredible." Id. at 474-75.[4]

¶87 Thus, while we have not specifically addressed the propriety of a circuit court's decision to scrutinize and weigh the credibility of an uncalled witness for purposes of assessing prejudice in the context of ineffective assistance, I believe that Guerard and Ramonez are instructive in that they advocate an approach that most clearly comports with controlling legal principles in Wisconsin. That is to say, it is the jury's duty to resolve questions as to the credibility and significance of an uncalled witness's testimony. See majority op., ¶¶64-65.

### III.

¶88 Because there are instances in which a circuit court can properly determine that a witness's testimony is incredible as a matter of law, I cannot advocate a bright-line rule wherein a circuit court must always conclude that a defendant was prejudiced by his or her counsel's failure to call a particular witness at trial. Rather, the better approach is for a circuit court to consider the following questions when evaluating prejudice for purposes of an ineffective assistance claim: (1) is the uncalled witness's testimony worthy of belief in light of the totality of circumstances of the case?; and (2) is the

---

[4] The McCallum concurrence suggested that, when faced with a recantation and an accusation, "[t]he circuit court does not determine which of the two statements is more credible; the circuit court is not to act as a thirteenth juror." State v. McCallum, 208 Wis. 2d 463, 490, 561 N.W.2d 707 (1997) (Abrahamson, C.J., concurring).

9

uncalled witness's testimony materially beneficial to the defendant's theory of the case?

¶89 As to the former inquiry, the circuit court should simply ask whether the uncalled witness's testimony has any indicia of credibility in light of the evidence presented at trial.[5] In answering this question, the fact that the circuit court may be troubled by inconsistencies in the uncalled witness's testimony is not necessarily of any import. The existence of inconsistencies in a witness's testimony does not normally lead to a finding that the testimony is incredible as a matter of law; rather, the existence of discrepancies ordinarily creates a credibility question for the jury to resolve. Ruiz, 75 Wis. 2d at 232.

¶90 As to the latter inquiry, the circuit court should simply consider whether the proposed testimony would be helpful to the defendant's trial strategy such that, if the jury were to believe the proposed testimony, it would likely have a reasonable doubt respecting the defendant's guilt.

IV.

¶91 If the circuit court had applied the above approach to the facts of this case, then it would have properly reserved questions as to the credibility and the weight of Jones's testimony for the jury to resolve.

---

[5] This type of threshold inquiry pays tribute to the "reasonable probability" language of the test for determining prejudice set forth in Strickland v. Washington, 466 U.S. 668, 694 (1984), while not imposing a more heightened burden upon the defendant than that contemplated by the United States Supreme Court in Strickland.

10

¶92 First, it is clear that Jones's eyewitness testimony was within the realm of believability in light of the totality of circumstances of this case.[6] As the majority explains, the only direct evidence that the state had to link the defendant to the shooting was the eyewitness testimony of the victim, Toy Kimber. Majority op., ¶18. As a result, the case boiled down to a credibility determination between Kimber and the defendant.

¶93 It is important to note that Kimber originally told police that he did not know the identity of the person who shot him. It was not until the next morning that Kimber identified the defendant as the shooter upon seeing the defendant's picture in a photo array. The record reflects that Kimber had known the defendant for at least three years and that there was a history of disputes between people living around North 45th Street, including Kimber, and people living around North 38th Street, including the defendant. The record also indicates that Kimber had five adult convictions and four juvenile adjudications and that Kimber changed his story at trial with respect to his identification of the shooter on the night in question.

¶94 In comparison, Jones, the only other eyewitness to the shooting, did not have an extensive criminal record. By all accounts, Jones appeared to be a neutral eyewitness to the shooting. She was neither a victim of the shooting, nor was she someone who possessed a familial or romantic relationship with the defendant, as she testified. That there may have been

---

[6] The circuit court never made an explicit finding that Jones's testimony was incredible as a matter of law. See majority op., ¶31 n.9.

11

inconsistencies in Jones's testimony should not have rendered her testimony unworthy of belief, particularly in light of Kimber's own inconsistent statements and the fact that the state had little evidence that directly linked the defendant to the shooting. Questions as to the credibility and the weight to be given to Jones's testimony should have been left for the jury to answer.[7]

¶95 Second, it is evident that Jones's eyewitness testimony was materially beneficial to the defendant's theory of the case. The defendant's trial strategy was two-fold: (1) attack the credibility of the victim eyewitness, Kimber; and (2) provide an alibi for the defendant. As to the former, it is clear that Jones's testimony would have helped undermine Kimber's identification of the defendant as the shooter. She would have testified that she knew the defendant from the neighborhood and that the defendant was not the shooter. She would have further testified that she did not identify the defendant to police officers upon viewing a photo array and that she told police officers the shooter had a smooth baby face, a feature that the defendant did not possess. As to the latter, Jones's testimony would have helped support the defendant's alibi defense: she would have testified that she saw the defendant across the street from the shooting minutes after the shooting occurred, which is consistent with the defendant's alibi theory. Thus, Jones's testimony, if believed by the jury,

---

[7] Indeed, the State conceded this point at oral argument.

12

would likely have created a reasonable doubt respecting the defendant's guilt.

V.

¶96 Because I agree that the defendant was denied his constitutional right to effective assistance of counsel, I join the majority opinion. However, I write separately to fully address the impropriety of the circuit court's decision to scrutinize and weigh Jones's testimony in assessing prejudice for purposes of the defendant's claim of ineffective assistance. Because the general rule in Wisconsin is that witness credibility determinations in criminal cases are for the jury to decide, and because the test for establishing prejudice in the context of ineffective assistance does not require a defendant to establish that trial counsel's error more likely than not altered the outcome of the case, the circuit court erred in discrediting Jones's testimony. The circuit court's inquiry regarding prejudice should have been limited to the following questions: (1) was Jones's testimony within the realm of believability in light of the totality of circumstances of the case?; and (2) was Jones's testimony materially beneficial to the defendant's theory of the case?

¶97 Had the circuit court limited its inquiry to the aforementioned questions, it would have correctly reserved questions as to the credibility and significance of Jones's testimony for the jury.

¶98 For the reasons stated, I respectfully concur.

¶99 ANNETTE KINGSLAND ZIEGLER, J. *(dissenting).* I respectfully dissent from the majority opinion. In my view, Jenkins did not receive ineffective assistance of counsel in the case at issue. Given the highly deferential standard and the presumption in favor of finding that counsel's performance was objectively reasonable, I conclude that counsel's performance was neither deficient, nor was Jenkins prejudiced by counsel's alleged failures, such that there is a "reasonable probability" that the result of the proceeding would have been different. Further, I conclude that Jenkins is not entitled to a new trial in the interest of justice.[1]

## I. ANALYSIS

¶100 "Whether a convicted defendant received ineffective assistance of counsel is a two-part inquiry." State v. Carter, 2010 WI 40, ¶21, 324 Wis. 2d 640, 782 N.W.2d 695 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). "First, the defendant must prove that counsel's performance was deficient. Second, if counsel's performance was deficient, the defendant must prove that the deficiency prejudiced the defense." Id. A defendant "must satisfy both prongs of the Strickland test" to succeed on a claim of ineffective assistance of counsel. Id. I conclude that neither prong is satisfied in the case at issue.

### A. Deficient Performance

---

[1] The majority opinion does not address whether Jenkins is entitled to a new trial in the interest of justice because it concludes that a new trial is warranted on grounds of ineffective assistance of counsel.

1

¶101 "To demonstrate deficient performance, the defendant must show that his counsel's representation 'fell below an objective standard of reasonableness' considering all the circumstances." Carter, 324 Wis. 2d 640, ¶22 (quoting Strickland, 466 U.S. at 688). "In evaluating the reasonableness of counsel's performance, this court must be 'highly deferential.'" Id. (quoting Strickland, 466 U.S. at 689). "Counsel enjoys a 'strong presumption' that his conduct 'falls within the wide range of reasonable professional assistance.'" Id. (quoting Strickland, 466 U.S. at 689). "Indeed, counsel's performance need not be perfect, nor even very good, to be constitutionally adequate." Id. (citing State v. Thiel, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305).

¶102 This presumption of constitutional adequacy extends to decisions of trial strategy. See Carter, 324 Wis. 2d 640, ¶23. "Counsel's decisions in choosing a trial strategy are to be given great deference. . . . Even decisions made with less than a thorough investigation may be sustained if reasonable, given the strong presumption of effective assistance and deference to strategic decisions." State v. Balliette, 2011 WI 79, ¶26, 336 Wis. 2d 358, 805 N.W.2d 334 (citing Carter, 324 Wis. 2d 640, ¶23; Strickland, 466 U.S. at 690-91). "We must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" Carter, 324 Wis. 2d 640, ¶22 (quoting Strickland, 466 U.S. at 688).

2

¶103 In light of that deferential standard, counsel's performance in the case at issue was not deficient. The "witnesses" that counsel chose not to call, Cera Jones ("Jones"), Christopher Blunt ("Blunt"), and Corey Moore ("Moore"), were significantly compromised, would not cooperate with counsel in his preparation of the case, and in any event, would not necessarily have aided Jenkins' defense.[2] From the perspective of counsel at the time of trial, we must presume that counsel concluded that these witnesses were not worth calling. In fact, presenting these witnesses might have detracted from the defense that counsel was putting forward. Thus, it is speculative to conclude as the majority does that counsel's failure to call the witnesses was deficient, as that term is defined for purposes of ineffective assistance of counsel.

¶104 Defense counsel's strategy at trial was simple: present evidence that Jenkins could not have been the shooter because he was across the street at a "trap" house at the time of the shooting.[3] In support of this strategy, counsel called both Jenkins and Daniel McFadden ("McFadden"), a friend who Jenkins was socializing with the night of the shooting, as

---

[2] The majority opinion rests its conclusion of deficient performance solely on counsel's decision not to call Jones. As a result, the majority opinion does not address counsel's decision not to call Blunt and Moore. Majority op., ¶9, n.6. Because I conclude that counsel did not perform deficiently, I address all the potential witnesses.

[3] The record reflects that a "trap" house is a place for young people to "hang out . . . smoke weed [and] drink."

witnesses. Both Jenkins and McFadden testified that Jenkins was asleep at the "trap" house when he was awoken by the shots. As the majority opinion correctly notes, the prosecution had only one witness refuting this version of events. Majority op., ¶18. The state called Toy Kimber, a man with five adult convictions and four juvenile adjudications, in its attempt to tie Jenkins to the shooting. Id., ¶21.

¶105 At the time counsel was developing Jenkins' defense strategy, the only statements in the record from Jones were her statements to police in the days following the shooting. According to the police reports, Jones indicated that she did not see the shooter's face because he was wearing a hood, and stated that she was not familiar with the place of the shooting or the people involved. Jones had further told police that she was not focused on the shooter, but rather, her attention was drawn to the laser target on the victim standing in front of her. Further, Jones initially concealed from police that she had been involved in a drug deal just prior to the shooting, but subsequently gave several different accounts of that drug deal. Jones' inconsistent and less than exculpatory statements provide a reasonable explanation for why counsel would not have believed that Jones would assist in Jenkins' defense.

¶106 Given that these were the facts available to counsel at the time of trial, counsel had no reason to call Jones, as her testimony would not necessarily have bolstered Jenkins' defense.

¶107 The majority makes much of Jones' testimony at the Machner hearing, wherein Jones first claimed that she had also told police that Jenkins was definitely not the shooter. The circuit court, however, found that Jones' testimony in this regard was not credible. Indeed, as the trial court noted, Jones' testimony seemed to get "better and better" as time went on, something that ordinarily does not occur with eyewitnesses. The circuit court detailed why Jones would be impeached and how she was not a credible witness. The circuit court concluded, based on Jones' own statements, that Jones was herself involved in a drug deal that evening. As the circuit court concluded at the Machner hearing, "there are way too many inconsistencies with Miss Jones's statements and . . . frankly she just did not come across as a credible witness." Majority op., ¶31 n.9.

¶108 The majority opinion fails to properly defer to the circuit court's credibility determinations: "this court will not exclude the circuit court's articulated assessments of credibility and demeanor, unless they are clearly erroneous." Carter, 324 Wis. 2d 640, ¶19 (citing Thiel, 264 Wis. 2d 571, ¶23). The circuit court was in the best position to evaluate the witnesses and it determined that Jones' testimony is relegated to having questionable value, at best. Under these circumstances, it is not difficult to see why counsel would not put Jones on the stand, even assuming he knew of her potentially exculpatory testimony. Not calling a drug dealing witness, who gave several inconsistent and impeachment-worthy statements to police, does not rise to the requisite level of deficient

5

performance. Simply stated, in finding counsel to be deficient, the majority supplants the circuit court's credibility determinations with its own credibility assessments. Typically, we do not second-guess the circuit court's credibility determinations, and I would not do so in the case at issue. See Carter, 324 Wis. 2d 640, ¶19 (citing Thiel, 264 Wis. 2d 571, ¶23).

¶109 The majority also does not respect the presumption due to counsel——that he acted reasonably. Instead, the majority presumes that Jones is a credible, believable, game-changing witness. The majority concludes that counsel should have known that the jury would have believed her inconsistent, impeachable testimony. The majority does not find it significant that, even assuming counsel knew that Jones would testify as she did at the Machner hearing, counsel would also have to account for Jones' previous inconsistent statements and her involvement in a drug deal that evening. Perhaps even more jugular is that in order for the jury to believe Jones' testimony the jury would have to determine that the police lied and that they failed to include Jones' exculpatory statements in the police reports.[4] To the extent that it can be believed that counsel knew or should have known about Jones' exculpatory testimony, counsel's performance in not calling Jones still was not necessarily deficient. Counsel's decision to not call Jones was just as likely a reasoned strategy.

---

[4] Other significant Brady implications may also arise given the assumptions made by the majority. See Brady v. Maryland, 373 U.S. 83, 87 (1963).

6

¶110 In its effort to cast counsel's performance as deficient, the majority opinion reads as if counsel did not even try to develop witnesses for the trial. In point of fact, the opposite rings true. In building his trial strategy, counsel testified at the Machner hearing that he "definitely" interviewed Jones as a possible witness, though he could not remember precisely how many times he spoke with her or the substance of those conversations. Jones herself testified at the Machner hearing that counsel had spoken with her a total of four times, twice by phone and twice in person. The record further reflects Jones' only known statements at the time of trial were not exculpatory, and it was not until Jenkins' postconviction motion that Jones was revealed as a potentially exculpatory witness. In fact, since by all accounts counsel did interview Jones, he likely concluded that she was either not exculpatory or not credible. Indeed, at least two other potentially exculpatory witnesses besides McFadden were present at trial, but counsel chose not to call these witnesses because he concluded that they lacked credibility. The presumption due to counsel is virtually nonexistent in the majority opinion.

¶111 A lot can happen in two and a half years to change a witness' testimony. The first we know of Jones' potentially exculpatory testimony is at the Machner hearing. The Machner hearing occurred two years and six months after Jenkins' trial. Although counsel did not have detailed recall, as he had lost his file in a flood, it is speculative to assume that Jones' testimony at a trial some 30 months previous would have matched

7

her statement at the Machner hearing. Again, the only information in the police reports, which were created around the time of the shooting two and a half years earlier, is that Jones did not add to the defense presented. If we afford proper deference to the circuit court, no credible evidence in this record demonstrates that counsel knew, at the time of trial, of Jones' potentially exculpatory testimony. If the majority were to couple the deference due to the circuit court with the presumption due to counsel, it would be hard pressed to conclude that counsel was deficient.

¶112 Without presuming that counsel acted effectively, the majority nonetheless concludes that counsel was deficient. In so doing, the majority must speculate that counsel did not have a good reason for not calling Jones and give virtually no weight to the circuit court's determinations, even though that court heard the testimony and reviewed the matter at Jenkins' Machner hearing.

¶113 Correctly, the majority does not opine that counsel's performance was deficient with respect to the other two allegedly exculpatory witnesses, Blunt and Moore. According to affidavits attached to Jenkins' motion for a new trial, Moore, Blunt, and Jenkins all shared a jail pod after Jenkins' arrest. Thus, had they testified, the jury would have learned that the defendant was in jail. Jenkins argues that counsel is deficient because while they were in jail together, Blunt allegedly confessed to Jenkins that he was the true perpetrator of the shooting. Moore allegedly witnessed the confession.

8

¶114 Although Blunt later denied having confessed, Jenkins nonetheless argues that Moore's hearsay testimony regarding the confession could have come in under two hearsay exceptions. See Wis. Stat. §§ 908.01(4)(a)1, 908.04(1)(a).

¶115 The majority does not contradict the court of appeals' conclusion that Jenkins' trial counsel was not ineffective for deciding not to call Blunt and Moore. State v. Jenkins, No. 2012AP46-CR, unpublished slip op., ¶¶20-22 (Wis. Ct. App. Jan. 15, 2013). I agree with the court of appeals' analysis that counsel was not deficient for not calling Blunt or Moore.

¶116 The parties stipulated that had Blunt been called as a witness he would have denied knowing Jenkins or anything about the shooting. Id., ¶22. Counsel cannot be deficient for failing to call a witness who would have added nothing to his client's case. Id. Thus, counsel's decision not to call Blunt as a witness was not deficient performance.

¶117 With respect to counsel's decision not to call Moore, Jenkins conceded that because Moore was in the postconviction phase of his own trial, Moore's attorney refused to allow him to be interviewed or make him available to Jenkins' counsel. This concession reveals that Jenkins' counsel was not deficient in not calling Moore as witness. Such investigation weighs strongly in favor of constitutionally adequate performance. See Carter, 324 Wis. 2d 640, ¶22.

¶118 Further, at the Machner hearing counsel articulated a reasonable strategic reason behind not putting the alleged confession into evidence: the confession testimony was not

9

credible and he "didn't want to . . . put a bunch of stuff into evidence that's gonna blow up in our face or make the jury think we're trying to blow smoke at them." Such a decision is a reasonable determination related to trial strategy, and not deficient performance. See Carter, 324 Wis. 2d 640, ¶23; Whitmore v. State, 56 Wis. 2d 706, 715, 203 N.W.2d 56 (1973) (holding that "[a]n attorney's strategic decision based upon a reasonable view of the facts not to call a witness is within the realm of an independent professional judgment.").

¶119 As a practical matter, this was a difficult case for the defense to build. Witnesses were not exactly cooperative with counsel. Counsel was forced to secure the assistance of Jenkins' sister to try and get witnesses to cooperate in Jenkins' defense. In requesting an adjournment just prior to trial, counsel averred that he had enormous problems in locating possible witnesses and securing their cooperation. Counsel's request for an adjournment was granted. Counsel further testified at the Machner hearing that possible witnesses regularly failed to show up for scheduled meetings, and that they regularly changed their stories from one meeting to the next, making a "multitude" of conflicting statements. All of this speaks to counsel acting in a diligent and professional manner under very difficult circumstances. When a witness does not cooperate, it cannot always be said that counsel is deficient. Here, at most, counsel failed to call a number of witnesses who had given several contradictory statements. Counsel was not deficient for failing to call such witnesses.

10

¶120 Jenkins' defense was that he was not the shooter, and that he was actually across the street at the time of the shooting. Jenkins had a witness who corroborated his testimony, and refuted the sole witness for the prosecution. Counsel described McFadden at the Machner hearing as "quite cooperative and quite credible" and "a good witness, one that's credible as to alibi." By contrast, other possible witnesses had given counsel a "multitude" of conflicting statements. Under these circumstances, why would counsel confuse the jury with cumulative witnesses who had made a number of different, possibly contradictory, perhaps nonexistent, statements over the course of time? Jenkins' counsel introduced what he believed to be a credible witness who supported his defense. It cannot be deficient performance for counsel to decide not to call cumulative, impeachable witnesses who might, in fact, undermine the client's case.

¶121 As we have stated, "[a] court must be vigilant against the skewed perspective that may result from hindsight, and it may not second-guess counsel's performance solely because the defense proved unsuccessful." Balliette, 336 Wis. 2d 358, ¶25 (citing Strickland, 466 U.S. at 689; State v. Harper, 57 Wis. 2d 543, 556-57, 205 N.W.2d 1 (1973)). Nonetheless, the majority opinion tends to second-guess counsel's actions. Counsel in the case at issue, however, did not render deficient performance as that term has heretofore been defined. Thus, the first prong is not satisfied.

B. Prejudice

11

¶122 In addition to finding that counsel was deficient, the majority must also conclude that Jenkins was prejudiced to the requisite degree. To satisfy the prejudice prong, the defendant must essentially show a "reasonable probability" that the outcome at trial would have been different if counsel had called the witnesses. The majority rests its prejudice determination on Jones' testimony alone. It concludes that her testimony alone, albeit conflicting and contradictory, would have changed the jury's conclusions. For many of the reasons discussed previously, I disagree. Jones' testimony would have, at best, been of minimal assistance to the defense and more likely, been harmful and damaging. I respectfully disagree with the majority's conclusion that Jones' testimony would have affected the outcome of the trial.

¶123 "To warrant setting aside the defendant's conviction, the defendant must demonstrate that his counsel's deficient performance was prejudicial to his defense." Carter, 324 Wis. 2d 640, ¶37 (citing Strickland, 466 U.S. at 691–93). "It is not sufficient for the defendant to show that his counsel's errors 'had some conceivable effect on the outcome of the proceeding.'" Id. (quoting Strickland, 466 U.S. at 693). "Rather, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id.; see also Balliette, 336 Wis. 2d 358, ¶24. Jenkins cannot make this showing in the case at issue.

12

¶124 The defense strategy was to challenge the identification of Jenkins as the shooter and instead establish an alibi defense. Even if Jones' testimony could have supported both parts of that defense, it is difficult to conclude that, given the significant problems with her inconsistent statements and involvement in a drug deal that evening, her testimony would have been persuasive to the jury.

¶125 Even assuming that it was error for Jenkins' trial counsel to not call Jones, Blunt, and Moore, the inclusion of their testimony would not have aided Jenkins' defense to the requisite degree. In the case of Jones, both the court of appeals and the circuit court concluded, "given all her contradictions . . . this court cannot say that there's a reasonable probability that but for not calling her the result would have been different." Jenkins, No. 2012AP46-CR, ¶15. I agree.

¶126 Jenkins was also not prejudiced by counsel's failure to call Blunt or Moore. As the circuit court properly concluded, Moore's testimony would have been inadmissible hearsay. Jenkins cannot have been prejudiced by counsel's failure to call a witness who would not have been allowed to testify. As for Blunt, the parties stipulated that, had he been called as a witness, Blunt would have denied involvement in the shooting, and would have denied knowing Jenkins. It cannot be said that Blunt's testimony would have changed the outcome of the trial. As such, failing to call him did not prejudice Jenkins. Thus, the second prong is, likewise, not shown.

13

## C. Discretionary Reversal

¶127 Jenkins has also asked this court to grant him a new trial under our power of discretionary reversal. See Wis. Stat. § 751.06. Because I conclude that counsel was not ineffective, however, I also conclude that the case at issue was fully tried, and a new trial in the interest of justice is not warranted. See State v. McGuire, 2010 WI 91, ¶¶61-64, 328 Wis. 2d 289, 786 N.W.2d 227.

¶128 Indeed, when a defendant raises a claim of ineffective assistance of counsel, relief is afforded to the defendant who proves that claim. The interest of justice analysis is not intended as a fallback position for a defendant who does not succeed in a claim of ineffective assistance of counsel. See, e.g., State v. Davis, 2011 WI App 147, ¶15, 337 Wis. 2d 688, 808 N.W.2d 130. The interest of justice statute "'was not intended to vest this court with power of discretionary reversal to enable a defendant to present an alternative defense at a new trial merely because the defense presented at the first trial proved ineffective.'" State v. Neumann, 2013 WI 58, ¶146, 348 Wis. 2d 455, 832 N.W.2d 560 (quoting State v. Hubanks, 173 Wis. 2d 1, 29, 496 N.W.2d 96 (Ct. App. 1992)).

¶129 Jenkins' assertion is that counsel was ineffective. If he cannot meet that test, he most certainly cannot meet what should be the more stringent standard set forth in Wis. Stat. § 751.06. Wisconsin Stat. § 751.06 is not intended to provide relief for a defendant who cannot meet the burden of showing ineffective assistance of counsel.

14

¶130 For the foregoing reasons, I dissent.

¶131 I am authorized to state that Justice MICHAEL J. GABLEMAN joins this dissent.