**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 3, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2019AP267-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2017CF2721

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

      PLAINTIFF-RESPONDENT,

  V.

TAMIO T. SHIPMAN-ALLEN,

      DEFENDANT-APPELLANT.

      APPEAL from a judgment and an order of the circuit court for Milwaukee County:  JEFFREY A. CONEN and JOSEPH R. WALL, Judges. *Affirmed.*

      Before Dugan, Fitzpatrick and Donald, JJ.

      **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Tamio T. Shipman-Allen appeals the judgment of conviction following his guilty pleas to one count of second-degree reckless homicide; one count of child abuse by recklessly causing great bodily harm to a child; and one count of child neglect resulting in bodily harm to a child.[1] He also appeals the order denying his postconviction motion.

¶2 Shipman-Allen argues that, because his postconviction motion alleged facts that, if true, would have entitled him to withdraw his guilty pleas, due to ineffective assistance of trial counsel, the trial court erred in denying his motion without an evidentiary hearing. We conclude that Shipman-Allen's conclusory allegation of prejudice was insufficient to entitle him to an evidentiary hearing and, therefore, we affirm.

## BACKGROUND

¶3 On June 9, 2017, the State issued a four-count complaint charging Shipman-Allen with the first-degree reckless homicide of T.D., a one-year-old girl; child abuse by recklessly causing great bodily harm to J.D., a three-year-old boy; child neglect resulting in bodily harm to T.D.; and child abuse by intentionally causing bodily harm to J.D. The conduct giving rise to the charges occurred on the morning of June 4, 2017, when Shipman-Allen was watching T.D. and J.D. in their home while their mother was working.[2] As relevant to this

---

[1] The Honorable Jeffrey A. Conen presided over the case through sentencing and the entry of the judgment of conviction. The Honorable Joseph R. Wall presided over the postconviction proceedings. We refer to Judge Conen as the trial court and Judge Wall as the postconviction court.

[2] According to the complaint, Shipman-Allen had been dating the children's mother for a few months.

appeal, the complaint stated that the penalty for first-degree reckless homicide was imprisonment for not more than sixty years.[3] At Shipman-Allen's initial appearance on June 9, 2017, a Milwaukee County Circuit Court court commissioner specifically told Shipman-Allen that the maximum penalty for first-degree reckless homicide was imprisonment for sixty years.

¶4 Shipman-Allen subsequently reached a plea agreement with the State and, on September 22, 2017, the State filed a four-count amended information that charged him with second-degree reckless homicide, instead of first-degree reckless homicide as originally charged.[4] The amended information listed the penalties for each charge, including that the penalty for second-degree reckless homicide was imprisonment for not more than twenty-five years, a fine of not more than $100,000, or both. The child abuse by causing bodily harm charge involving J.D. was dismissed but read in at sentencing.

¶5 At the September 22, 2017 plea hearing, the State explained the plea agreement indicating that, following Shipman-Allen's guilty pleas to counts one through three of the amended information, the parties would be "completely free to argue for the appropriate sentence in [the] case" at sentencing. The trial court asked Shipman-Allen whether the State's description was accurate. Both Shipman-Allen and trial counsel said that the description was accurate.

---

[3] The complaint also stated that the penalty for child abuse by recklessly causing great bodily harm to a child (count two) was imprisonment for not more than fifteen years, a fine of not more than $50,000, or both; and that the penalty for each charge in counts three and four was imprisonment for not more than six years, a fine of not more than $10,000, or both.

[4] The charges of child abuse by recklessly causing great bodily harm to J.D. and child neglect resulting in bodily harm to T.D. were essentially identical to those charged in the original information.

¶6    The trial court then conducted a thorough plea colloquy with Shipman-Allen that included informing him of, and making sure he understood the maximum possible term of imprisonment and the maximum possible fine for each charge to which he was pleading guilty, and that each term of imprisonment could be divided between initial confinement (I.C.) and extended supervision (E.S.). The trial court then engaged Shipman-Allen in the following colloquy:

> Trial court:    Do you understand I don't have to follow anyone's recommendations, I can sentence you to the maximum penalty in all these cases and run those [sentences] consecutive to one [an]other and consecutive to any time that you may be serving?  Do you understand that?
>
> Shipman-Allen:    Yes.
>
> Trial court:    So in looking at all of this, you're facing 28 years of confinement time maximum and 18 years of extended supervision maximum.  Do you understand that?
>
> Shipman-Allen:    Yes.

The trial court completed the colloquy and accepted the guilty pleas.[5]

¶7    At the December 15, 2017 sentencing, the State recommended forty years of imprisonment, consisting of twenty-eight years of I.C. and twelve years of E.S.  Trial counsel recommended twenty to thirty years of imprisonment, consisting of ten to fifteen years of I.C. and ten to fifteen years of E.S.  The trial

---

[5] Shipman-Allen's postconviction motion states that he does not contest that the trial court complied with the requirements for taking a plea as set forth in WIS. STAT. § 971.08 (2017-18).

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

court then imposed a global sentence amounting to forty years of imprisonment—twenty-eight years of I.C., followed by twelve years of E.S.[6]

¶8 On January 4, 2019, Shipman-Allen filed a postconviction motion, seeking an order allowing him to withdraw his pleas on the ground that trial counsel was ineffective because he made two incorrect statements that purportedly induced Shipman-Allen to plead guilty. The first statement was that "he was facing a potential life sentence on the original charge of first[-]degree reckless homicide, which he could avoid by pleading guilty to the amended charge of second[-]degree reckless homicide." The second statement was that "the State would be recommending concurrent time for the three counts *such that if the State's recommendation was followed*, the most initial confinement that he would receive would be 15 years." (Emphasis added.) Shipman-Allen also alleged that he was prejudiced by trial counsel's deficient performance "because he would not have entered his guilty plea but for counsel's error." Shipman-Allen alleged that the two incorrect statements were made by trial counsel in a meeting at the jail the day before the plea hearing, and again during a recess in the plea proceeding.

¶9 In a written decision, the postconviction court denied the motion holding that Shipman-Allen's statement that but for trial counsel's advice he would not have pled guilty was conclusory and insufficient to warrant a hearing.

¶10 This appeal followed.

---

[6] Shipman-Allen's sentences were comprised of fifteen years of I.C. and six years of E.S., consecutive to any other sentence, for the second-degree reckless homicide; ten years of I.C. and four years of E.S., consecutive to the sentence on count one and any other sentence, for the child abuse by recklessly causing great bodily harm to a child; and three years of I.C. and two years of E.S., consecutive to the sentence on counts one and two and any other sentence, for the child neglect resulting in bodily harm to a child.

**DISCUSSION**

¶11     On appeal, Shipman-Allen raises the same arguments that he made in his postconviction motion.  The State argues that Shipman-Allen's bare bones allegations are insufficient to warrant a hearing because he failed to allege why he would have proceeded to trial but for the alleged misinformation that trial counsel provided to him.

### I.     Standard of review and applicable law

¶12     A defendant is not automatically entitled to an evidentiary hearing on a postconviction motion.  "A hearing on a postconviction motion is required only when the movant states sufficient material facts that, if true, would entitle the defendant to relief."  *See State v. Allen*, 2004 WI 106, ¶14, 274 Wis. 2d 568, 682 N.W.2d 433.  "[I]f the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief[,]" a trial court may deny a postconviction motion without a hearing.  *See id.*, ¶9.  Whether a motion alleges sufficient facts that, if true, would entitle the defendant to an evidentiary hearing presents a question of law that we review *de novo*.  *See State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996).

¶13     Furthermore, courts in Wisconsin have

> long held that the facts supporting plea withdrawal must be alleged in the petition and the defendant cannot rely on conclusory allegations, hoping to supplement them at a hearing.  A defendant must do more than merely allege that he would have pled differently; such an allegation must be supported by objective factual assertions.

*Id.* at 313 (citation omitted). "[A] defendant should provide facts that allow the reviewing court to meaningfully assess his or her claim." *Id*. at 314. As stated in *Allen*:

> postconviction motions sufficient to meet the *Bentley* standard allege the five "w's" and one "h"; that is, who, what, where, when, why, and how. A motion that alleges, within the four corners of the document itself, the kind of material factual objectivity ... will necessarily include sufficient material facts for reviewing courts to meaningfully assess a defendant's claim.

*Id*., 274 Wis. 2d 568, ¶23 (footnote omitted).

¶14    A defendant who seeks to withdraw a guilty plea after sentencing must prove by clear and convincing evidence that a refusal to allow plea withdrawal would result in "manifest injustice." *State v. Taylor*, 2013 WI 34, ¶24, 347 Wis. 2d 30, 829 N.W.2d 482 (citation and one set of quotation marks omitted). A defendant may bring a *Nelson/Bentley*[7] motion to withdraw his or her plea on manifest injustice grounds based on a factor extrinsic to the plea colloquy that renders the plea infirm. *See State v. Sulla*, 2016 WI 46, ¶25, 369 Wis. 2d 225, 880 N.W.2d 659. One way a defendant may demonstrate manifest injustice is to establish that he or she received ineffective assistance of counsel. *State v. Dillard*, 2014 WI 123, ¶84, 358 Wis. 2d 543, 859 N.W.2d 44. Whether trial counsel was ineffective is a question of constitutional fact that we analyze under a mixed standard of review. *See id.*, ¶86. We will uphold the trial court's findings of fact unless they are "clearly erroneous." *See id.* However, we independently review whether those facts constitute ineffective assistance. *See id.*

---

[7] *Nelson v. State*, 54 Wis. 2d 489, 493, 497-98, 195 N.W.2d 629 (1972), *modified by State v. Bentley*, 201 Wis. 2d 303, 310, 548 N.W.2d 50 (1996).

7

¶15    To establish a claim of constitutionally ineffective assistance of counsel, a defendant must establish the following two components:   (1) trial counsel's performance was deficient; and (2) the deficient performance resulted in prejudice to the defense.  ***Strickland v. Washington***, 466 U.S. 668, 687 (1984).  A reviewing court may decide an ineffective assistance of counsel claim by analyzing either component.  ***Id.*** at 697.  To prove deficient performance, the defendant must show that his or her counsel's representation "fell below an objective standard of reasonableness" considering all the circumstances.  ***Id.*** at 688.  Our supreme court explained that "[t]o establish prejudice in the context of a postconviction motion to withdraw a guilty plea based upon ineffective assistance of counsel, the defendant must allege that 'but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"  *See **State v. Burton***, 2013 WI 61, ¶50, 349 Wis. 2d 1, 832 N.W.2d 611 (citations omitted).

## II.    The trial court properly denied Shipman-Allen's conclusory motion without a hearing

¶16    Here, Shipman-Allen's postconviction motion merely states that he accepted the plea offer because trial counsel told him he was facing a potential life sentence on the original charge of first-degree reckless homicide, which he could avoid by pleading guilty to the amended charge.  He also asserts that trial counsel told him that the State would be recommending concurrent sentences on the three counts such that, if the recommendation was followed, the longest I.C. he would receive would be fifteen years.  However, Shipman-Allen's motion does not allege any facts that support his conclusory allegation that but for the misinformation that he received from trial counsel he would not have entered his pleas.

¶17    We conclude that ***Bentley*** controls this decision.  In ***Bentley***, our supreme court stated that Bentley's motion essentially alleged that "had [trial]

8

counsel correctly informed him about his minimum parole eligibility date, he would have pled differently." *See id.*, 201 Wis. 2d at 316. However, the supreme court concluded that the allegation, absent more, was not sufficient to raise the issue of whether Bentley was prejudiced by the misinformation. *See id.* The ***Bentley*** court held that "[t]he conclusion of the court of appeals that Bentley's motion presented substantial allegations of prejudice 'well beyond' a conclusory allegation [was] erroneous" because the appellate court had failed to identify any facts to support the allegation. *See id.* The supreme court further stated that "[w]ithout facts to support his allegation that he pled guilty only because of the misinformation, [the defendant's] allegation amounts to merely a self-serving conclusion", which "is no more than a 'conclusory allegation.'" *See id.* (citation omitted).

¶18 The supreme court further explained that its review of Bentley's motion revealed that the motion failed to allege any factual assertions which would allow the court to meaningfully assess Bentley's claim that he was prejudiced by the misinformation. *See id.* As examples, the supreme court stated that Bentley never explained how or why the difference between a minimum parole eligibility date of eleven years and five months as compared to thirteen years and four months would have affected his decision to plead guilty and that Bentley alleged "no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether to plead guilty." *See id.* at 316-17.

¶19 Here, Shipman-Allen merely states that he accepted the plea offer because trial counsel told him he was facing a potential life sentence on the original charge of first-degree reckless homicide, which he could avoid by pleading guilty to the amended charge, and that trial counsel told him the State

9

would be recommending concurrent time for the three counts such that, if the State's recommendation was followed, the most I.C. Shipman-Allen would receive would be fifteen years. Shipman-Allen failed to allege any special circumstances that support the conclusion that he placed particular emphasis on the State's recommendation to the trial court.

¶20 Moreover, the very words in the alleged statement—"*such that if the State's recommendation was followed*"—show that Shipman-Allen knew that the recommended confinement time was conditioned on the trial court accepting any such recommendation. Further, Shipman-Allen knew that the trial court was not bound by the State's recommendation. During the plea colloquy, the trial court specifically advised him, "I don't have to follow anyone's recommendations, I can sentence you to the maximum penalty in all these cases and run those consecutive to one [an]other and consecutive to any time that you may be serving[.]" We conclude that Shipman-Allen failed to allege facts to support his conclusory statement that, but for trial counsel's statement that the State would be recommending fifteen years of confinement, he would not have entered his pleas.

¶21 Shipman-Allen also does not allege any special circumstances that might support the conclusion that he placed particular emphasis on the difference between a life sentence and a maximum sixty-year sentence for the first-degree reckless homicide charge. Nor does he explain how or why the difference between a potential life sentence and sixty-year sentence would have changed his decision to plead guilty. According to the plea questionnaire, Shipman-Allen was twenty-two years old at the time of the plea. Under the original charges, Shipman-Allen would have been seventy-eight years old, if the trial court had imposed fifty-six years of I.C. By contrast, pursuant to the plea negotiations, he would be fifty years old at the time he completed the maximum twenty-eight years of I.C.

10

Shipman-Allen fails to allege any facts to support his conclusory statement that, but for trial counsel's misstatement that a life sentence was the maximum penalty for first-degree reckless homicide, he would not have entered his pleas.[8]

¶22 Further, during the plea colloquy after Shipman-Allen told the trial court that he reviewed the criminal complaint, the trial court asked, "So is everything [in the complaint] true and correct?", to which Shipman-Allen responded, "Everything." The trial court then asked, "Is everything true and correct?", to which Shipman-Allen said, "Yes." Shipman-Allen fails to explain why he would have proceeded to trial on the original charges when he admitted that all the factual allegations in the criminal complaint were true—he does not allege any defense or any facts supporting a defense.

---

[8] As a result of the plea negotiations, the original maximum penalties were reduced from eighty-seven years to forty-six years of confinement, a difference of forty-one years. The maximum I.C. was reduced from fifty-six years to twenty-eight years, a difference of twenty-eight years, and the maximum E.S. was reduced from thirty-one years to eighteen years, a difference of thirteen years.

As previously noted, the original charges of the complaint involved maximum terms of imprisonment as follows:

| Count one: | Sixty years—forty years of I.C./twenty years of E.S.; |
| Count two: | Fifteen years—ten years of I.C./five years of E.S.; |
| Count three: | Six years—three years of I.C./three years of E.S.; and |
| Count four: | Six years—three years of I.C./three years of E.S. |
| **Total:** | Eighty-seven years—fifty-six years of I.C./thirty-one years of E.S. |

As a result of the plea negotiations, Shipman-Allen faced maximum terms of imprisonment as follows:

| Count one: | Twenty-five years—fifteen years of I.C./ten years of E.S.; |
| Count two: | Fifteen years—ten years of I.C./five years of E.S.; and |
| Count three: | Six years—three years of I.C./three years of E.S. |
| **Total:** | Forty-six years—twenty-eight years of I.C./eighteen years of E.S. |

¶23 We conclude that Shipman-Allen failed to allege any facts that would explain his conclusory statement that but for trial counsel's misinformation about facing a life sentence for first-degree reckless homicide, he would have proceeded to trial on the original charges. His conclusory statements in his postconviction motion failed to provide any reason why he would have insisted on going to trial on the original charges. *See **Bentley***, 201 Wis. 2d at 316 (stating that "[w]ithout facts to support his allegation that he pled guilty only because of the misinformation, [the defendant's] allegation amounts to merely a self-serving conclusion", which "is no more than a 'conclusory allegation.'" (citation omitted)).[9]

## CONCLUSION

¶24 For the reasons stated above, we conclude that Shipman-Allen did not allege sufficient facts that, if true, would have entitled him to withdraw his guilty pleas due to ineffective assistance of trial counsel. Therefore, the trial court acted properly when it denied Shipman-Allen's postconviction motion without an evidentiary hearing and we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)(5).

---

[9] The State also argues that the postconviction court properly exercised its discretion when it denied Shipman-Allen's motion because his claims were conclusively disproved by the record. However, as an appellate court, we decide cases on the narrowest possible grounds. *See **State v. Blalock***, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989). We need not address the State's argument because we conclude that Shipman-Allen failed to allege facts to support the prejudice component of his ineffective assistance of counsel claim.

12